THE AUGUSTA AND SUMMERVILLE RAILROAD COMPANY *vs.* RANDALL *et ux.*

1. If the jury believed the testimony of the plaintiff, there was enough to authorize the verdict, and it was not contrary to the principles of justice and equity.

2. Where the depositions of a witness were taken under the provisions of the code, counsel for both parties appearing before the commissioner and propounding oral questions to the witness, and where, on cross-examination, counsel for one of the parties inquired of the witness if she had not made a certain affidavit, and thereupon read the affidavit to her, and the contents of it were taken down by the commissioner and fully set out in the deposition and returned to the court as a part of the testimony of the witness, the testimony in relation to such affidavit was not inadmissible on the ground that the paper was not delivered to the commissioner and annexed to the commission, although the paper itself was not introduced in evidence. Section 3887 of the code does not apply to such a case.

3. Where, in a suit against a street railroad company for a personal injury, the plaintiff testified that, after she was thrown from the car to the ground and immediately after she had risen, picked up her bundles and brushed herself, the first thing she did was to secure the name of the driver of the car (whom she knew very well by sight only), and that she then went to her house, which was about 150 or 200 yards away, deposited her bundles and went across the street to where her sister-in-law lived; and where the sister-in-law testified that, when the plaintiff reached her house, she was greatly excited, and in reply to an inquiry as to what was the matter, made certain statements as to how she was hurt, whereupon the witness gave her some brandy and tea and put her to bed: it was not admissible for the sister-in-law to testify what statements the plaintiff made to her, or that they were the same as what she testified on the trial. Such statements formed no part of the *res gestæ*. They neither accompanied the main transaction nor were free from all suspicion of afterthought.

(a) This case differs in its facts from that of the *Augusta Factory vs.*

*Barnes,* 72 *Ga.* 217, and that case will not be extended beyond its facts.

4. If a passenger on a street-car signalled the driver to stop for her to get off by ringing the bell or giving any other signal which the driver recognized, and if he stopped the car for her to get off, but did not stop long enough to give her a reasonable opportunity to do so, and she was thereby injured, the company was negligent. This was a question of fact for the jury, and they had the right to believe the testimony of the plaintiff in preference to that of other witnesses.

5. The ground of the motion for a new trial excepting to the admission of the evidence of a witness on cross-examination, in relation to an affidavit, is controlled by the third head-note above.

6. If a person is injured by the negligence of a railroad company, the extent of the injury is a proper subject-matter of inquiry. How she was hurt, whether she had a miscarriage or abortion in consequence of the injury, and whether she suffered great pain in consequence thereof, may all be inquired into, and are not consequences too remote to authorize a recovery. It was therefore not error to refuse to charge that "if the damages are only the imaginary result of the tortious act, or other and continuous circumstances preponderate largely in causing the injurious effect, such damages are too remote to be a basis of recovery against the wrong-doer, and damages traceable to the act, but not its legal or material consequences, are too remote and contingent."

7. There was no error in refusing to charge as follows: "And should it appear that the negligence of the railroad would not have damaged the party complaining, but by the interposition of an agency over which the railroad neither had nor exercised control, she was damaged, then the party complaining cannot recover." Such a charge would not have been applicable to the facts of the case.

8. Punitive damages are given on account of the manner in which a tort is done, and the injury to the wounded feelings of the plaintiff is taken into consideration, but there is nothing of that kind in this case, and there was no error in refusing to charge that "the facts in evidence, to authorize punitive damages, must be such as would subject the driver to liability to conviction for criminal negligence if prosecuted therefor."

9. The presumption that, where it has been shown that a passenger on a railroad was hurt or damaged by the running of its trains or machinery, the company was negligent, is a common law presumption and did not originate with the act of 1855 (code, §3033); nor is that act in violation of amendment 14 of the constitution of the United States, on the ground that it abridges the privileges and immunities of the company and puts upon it a presumption not enforced against private citizens.

.10. An exception that the verdict is contrary to the charge is equivalent to saying that it was contrary to law. It was not so in this case.

November 10, 1887.

New Trial. Witness. Evidence. Depositions. Interrogatories. Railroads. *Res Gestæ*. Damages. Presumptions. Before Judge RONEY. Richmond Superior Court. April Term, 1887.

The evidence for the plaintiff tended to show that she was a passenger on a car of the defendant, going to her home. On reaching a turn-table on the track, she rang the bell, and shortly afterwards the car stopped. She went to the rear platform to alight, but before she was able to do so, the car was jerked forward, throwing her to the ground and injuring her seriously. Her arms were full of bundles, so that she failed to catch hold of anything to steady herself.

The driver of the car testified that he knew nothing of the injury, except that, after Mrs. Randall fell, he saw her getting up. He heard no bell ring before she left the car. Much other evidence was introduced by the defendant to show that the bell was not rung before Mrs. Randall attempted to alight, and that her injuries were not so severe as she testified. The car was crowded, and was moving slowly when she stepped off.

Such other portions of the evidence as are material here are stated in the decision.

F. H. MILLER; J. S. W. & T. DAVIDSON, for plaintiff in error.

TWIGGS & VERDERY, for defendants.

BLANDFORD, Justice.

This was an action brought by Hattie A. Randall and her husband, to recover damages, against the Augusta and

Summerville Railroad Company, for injuries which she alleged she had sustained by reason of the negligence of the servants of the company in throwing her from one of its cars, thereby injuring, wounding and bruising her, and causing her great pain and suffering. A verdict was had for the plaintiffs in that action, in which the jury assessed her damages at $1,000. A motion for new trial was made by the street railroad company on various grounds.

1. The first ground of error is, that " the verdict is contrary to the evidence, and the principles of justice and equity." We think there is nothing in this ground. There was enough evidence, if the jury believed the testimony of the plaintiff, to have authorized this verdict; and we do not see where the principles of justice and equity have been violated in the finding of the jury.

2. The next ground is, that " the court admitted in evidence, over the objections of defendant's attorneys, the testimony on the cross-examination of Miss Keener, consisting of the contents of an *ex parte* affidavit read to the witness bodily, but not annexed to the deposition, and not before the court or accompanying or offered as an accompaniment to this testimony; the ground of objection at the time of the examination being as follows: That all testimony referring to this paper (which was identified by the witness and marked 'exhibit " A ") should be excluded unless such paper should be delivered to the commissioner, by counsel for plaintiffs, and annexed to the depositions; counsel for the plaintiffs contending that the testimony of the witness in relation to such paper should stand as a part of the depositions, and declining to deliver up the paper. These objections' were renewed on the trial as to this testimony, and an inspection of the paper, which had been called for under notice, demanded, that the court might determine the force of the objection ; all of which objections were overruled, and the paper was not produced or ever placed in evidence by the plaintiffs; and the evidence was admitted over said objections without inspecting the paper."

The Augusta and Summerville Railroad Company *vs.* Randall *et ux.*

To understand this ground properly: The defendant sued out a commission to take the testimony of Miss Keener. Counsel for plaintiffs and for the defendant both appeared before the commissioner, in the manner provided by the code, and examined the witnesses orally instead of by writ-ten interrogatories.   On cross-examination, counsel for the plaintiffs put to the witness the question if she had not made a certain affidavit, and thereupon read to her the affidavit, the contents of which were taken down by the commissioner and fully set out in the deposition, and re-turned to the court as a part of the testimony of the wit-ness.   Counsel for the defendant, who had sued out the commission, objected to this testimony on the ground that the affidavit must be annexed to the return made by the commissioner.   The objection was founded upon section 3887 of the code, which says that witnesses may write out their own answers in the presence of the commissioners, and by their consent; and if the witnesses answer from written memoranda, such memoranda shall be sent with the commission, and the fact certified by the commissioners. We think the learned counsel mistake the application of this rule.   It clearly does not apply in a case of this kind, where the affidavit was read to the witness, and was fully set out by the commissioner, and the witness examined as to whether she made it, etc.   We think that was all the law required should be done.   The plaintiff in error, there-fore, can take nothing by this exception.

3. The 4th ground is of a more serious character.   It is as follows: " Because the court admitted in evidence, over the objection of defendant's attorneys, on direct examina-tion and after Mrs. Randall had testified, as a part of the *res gestæ*, the statement made by Mrs. Hattie A. Randall to her friend and relative, Mrs. Shellman, who resided at a distance of a block and a half from the place of accident, and opposite her own residence, and to whose house Mrs. Randall went after first going to her own home.   The whole of this testimony appears in the brief of testimony,

but the particular objectionable portion is the statement that she rang the bell and the car stopped before she attempted to get off, and then started and threw her from the platform; defendant's attorneys insisting that this was hearsay testimony and inadmissible as a part of the *res gestæ*."

It appears in this case that, after Mrs. Randall was precipitated from this car upon the ground, and immediately after she had gotten up, picked up her bundles and brushed herself, the first thing she did was to secure the name of the driver of the car. According to her testimony, she knew him very well by sight, having ridden in the same car with him often before; but after this occurrence, the first thing she did was to inquire his name. She then went to her house, which was a block and a half off—150 or 200 yards; entered her house, and deposited her bundles. She then left and went across the street to where Mrs. Shellman, her sister-in-law, lived, and while there made a statement to Mrs. Shellman as to how she was hurt. When Mrs. Shellman was introduced to prove what Mrs. Randall said to her, objection was made to her testifying on that subject. She testified in this way (Mrs. Randall having testified first) : that when Mrs. Randall came into her house, she was greatly excited; and in reply to Mrs. Shellman's inquiry as to what was the matter, she told her she had been thrown off the car and was hurt, and how she came to be hurt. Thereupon Mrs. Shellman got her a glass of brandy, made some tea and gave it to her, and put her to bed. It does not appear at what particular time she made this statement to Mrs. Shellman. Mrs. Shellman went on to testify that what Mrs. Randall stated to her at her house on that occasion was what she (Mrs. Randall) had sworn to on the trial of this case; but how long after the occurrence she made this statement to Mrs. Shellman, does not appear in the record. Mrs. Shellman merely testified that what Mrs. Randall had stated in her testimony was the same thing she told her; but did

not state what Mrs. Randall did tell her. The court, under these circumstances, admitted this testimony of Mrs. Shellman as part of the *res gestæ.*

As we understand it, *res gestæ* are things connected with a transaction, taking place and stated at the time of the transaction. But that doctrine has been somewhat extended by our courts. Our code declares (§3773) that "declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, are admissible in evidence as part of *res gestæ.*" Declarations not connected with the transaction, nor bearing upon it or serving to illustrate it, although made at the very time the act was committed, are not admissible in evidence; they must be connected with the main act. And it is the duty of the court, when testimony of this sort is offered, to determine, before it goes to the jury, whether the declarations were connected with the main act, or so nearly connected in point of time as to be free from all suspicion of device or afterthought. The court must determine this before admitting the testimony to the jury; and after it goes to the jury, they may also consider it and determine what it is worth, under a proper charge from the court. Under the facts as they appear in this record, were these declarations connected with the transaction? They were not made at the time of the act complained of. But were they so nearly connected with this main fact in point of time as to be free from all suspicion of device or afterthought? Upon recovering herself, after this occurrence, the first thing she did was to inquire the driver's name. What for? What was her object? What was her purpose in inquiring the name of this driver, whom she knew well by sight and with whom she was personally acquainted, having ridden with him frequently on the car? Is that free from all suspicion that she had an ulterior purpose or design in making this inquiry? Does it not give rise to the suspicion that she was fixing for a case against this street railroad company?

Does it not have that appearance? This was done after the act was over. She then went to her own house, 150 or 200 yards off, and put away her bundles; then crossed the street and went to her sister-in-law's house, and while there entered into the details of how this thing occurred. We are of the opinion that the court did wrong to admit this as a part of the *res gestæ.* It is not free from all suspicion; it is not connected with the transaction so closely in point of time as to be free from all suspicion of device or afterthought. The suspicion might arise in the mind of any man, that here was device or afterthought. She inquired that driver's name for some purpose. She had had time to look over the field; she seemed to have known her rights and to be preparing for them. Having done this, she went and made this relation to her sister-in-law, stated in her testimony, about her having rung the bell and the car having stopped, her attempt to depart from the car, and the starting of the car without affording her a reasonable opportunity to get off—the vital facts upon which the whole case turns. These declarations were not exclamatory on her part, upon receiving this injury. And we cannot help coming to the conclusion in our own minds that here was artifice or afterthought, or at least that it is not free from all suspicion. The court erred in not rejecting it.

We are aware that what has been said may appear to be in conflict with some of the former decisions of this court; but a careful examination of those decisions will show that they differ from the present case in their facts. The case of the *Augusta Factory vs. Barnes,* 72 *Ga.* 217, was much relied on by counsel for the defendants in error in this case. That case must rest alone upon its own peculiar facts, and will not be extended beyond them; but it differs widely from this case in all respects except in point of time in which the declarations were made. The proximity of time in which declarations are made to the main transaction is not the only test of their admissibility in

The Augusta and Summerville Railroad Company *vs.* Randall *et ux.*

evidence, but they must be also free from all suspicion of device or afterthought. The testimony admitted as *res gestæ* in this case was very material. Mrs. Randall is but feebly sustained in her statement that she rang the bell and that the car stopped. The testimony is very strong and weighty that no bell was rung, that the car was not stopped, that she attempted to get off the car at or about the place she had often before gotten on and off, without its being stopped, and that it was not a usual place for the car to stop. But if she rang the bell, and if the driver recognized her signal, whether it was at the usual place for stopping the street-car or not, then he ought to have given her a reasonable opportunity to get off and not jeopardized her person in this way.

4. The main question in this case is, was this company guilty of negligence; and there is nothing else in it, leaving out this testimony of Mrs. Shellman which we do not think ought to have been admitted. If Mrs. Randall made that signal by the ringing of the bell, or gave any other signal which the driver recognized, and if he stopped his car for her to get off, and did not stop long enough to give her a reasonable opportunity to depart from the car, then the company was negligent, in our opinion. This was a fact for the jury, and they had a right to believe Mrs. Randall in preference to all the other witnesses who testified against her. It resolves itself into that, and that alone, and that is all there is in this case, when you sweep out her being bolstered up by her sister-in-law, Mrs. Shellman. It would be hardly necessary, if the case did not go back, for us to notice another ground of exception, under our view of it.

5. Another ground of exception is, that the court admitted in evidence, over objection of defendant's attorneys, the testimony on the cross-examination of Anna M. Taliaferro; this ground being the same as the third ground, relating to the testimony of Miss Keener, which we have already disposed of.

6. The next ground is, "because the court refused to charge, as requested in writing by the defendant's attorneys, as follows: 'If the damages are only the imaginary result of the tortious act, or other and continuous circumstances preponderate largely in causing the injurious effect, such damages are too remote to be a basis of recovery against the wrong-doer, and damages traceable to the act, but not its legal or material consequences, are too remote and contingent.'" Code, §§3072, 3073.

We think the court did right to refuse that charge. We do not see where any remote damages are claimed in this case. If a person is injured by the negligence of a railroad company, the extent of the injury is a proper subject-matter of inquiry. How was she hurt, did she have a miscarriage or abortion in consequence of the injury, did she suffer great pain in consequence of the injury?—all these are legitimate matters of inquiry, and are not consequences too remote. And the testimony offered in this case did not authorize the court to charge these two sections of the code.

7. Another ground of exception is, that "the court refused to charge, as requested in writing by the defendant's attorneys, as follows: 'And should it appear that the negligence of the railroad would not have damaged the party complaining, but by the interposition of an agency over which the railroad neither had nor exercised control, she was damaged, then the party complaining cannot recover.'" We think the court did right to refuse that charge, for the reason that it was not applicable to the facts of this case.

8. The next ground is, that "the court refused to charge, as requested in writing by the defendant's attorneys, that the facts in evidence, to authorize punitive damages, must be such as would subject the driver to liability to conviction for criminal negligence if prosecuted therefor." We think the court did right to refuse this charge. Punitive damages are given as a compensation for the manner in

which the thing is done; and the injury to the wounded feelings of the party is taken into consideration; but there is nothing of that sort in this case, according to the evidence in the record, and nothing in the pleadings to make such a case as that.

9. The next ground of exception is, " because the court refused to charge, as requested in writing by defendant's attorney, that the act of 1855 (p. 155), now section 3033 of the code of Georgia, particularly in the enactment that ' the presumption in all cases being against the company,' is unconstitutional, and in violation of article fourteen of the constitution of the United States in this: that it is the enforcement of a law which abridges the privileges and immunities of the defendant, in that it puts upon it a presumption which is not enforced against private citizens."

This presumption that, where the plaintiff has shown that he was a passenger and was hurt or damaged by the running of the railroad company's trains or machinery, the company was negligent, is a common law presumption. It is no new thing because it was not enacted in this State until the act of 1855. It obtained at common law, and had been the law of England and of this country all the time. It puts no greater hardship upon this railroad company than upon anybody else engaged in the same or any other business.

If this clause of the constitution were to be interpreted as insisted upon by counsel for the plaintiff in error, it would prevent the requirement that a man should obtain license in order to sell spirituous liquors; for why should he be required to obtain license any more than the merchant who sells dry goods, meat, etc., and who is not required to have one? Such a construction is clearly not contemplated by this fourteenth amendment. It refers to classes, and means that you shall not impose a different rule upon a man whose color is black from that imposed upon one whose color is white. That was the purpose of the amendment; that is why it was put there; and it was

not intended to mean anything else. The court did right to refuse the charge requested, and if he had given it, would have committed manifest error.

10. There are several other grounds of exception, all of them to the effect that the verdict was contrary to the charge of the court. That simply means that the verdict of the jury is contrary to law; and we do not think it is. This disposes of all these exceptions.

This case is reversed, therefore, on the assignment of error in the 4th ground of the motion for new trial, viz. the admitting in evidence of the statements of Mrs. Randall to Mrs. Shellman, as a part of the *res gestæ*.

Judgment reversed.