## NORTHERN DEPARTMENT—CENTRAL DIVISION.
## MAY TERM, 1896.

EDWARD MARSHALL v. THE WEIR PLOW COMPANY.
### No. 84.

1. EVIDENCE—*Non-Expert Witnesses.* It is error for the court to permit non-expert witnesses to testify to their mere inferences and conclusions from the facts instead of stating the facts upon which such conclusions and the verdict of the jury depend.

2. ———— *When New Trial Should Be Granted.* When incompetent evidence has been admitted over the objection of the adverse party, a motion for a new trial on that ground should be sustained, unless it clearly appears that the same verdict must necessarily have been returned had such evidence been excluded.

MEMORANDUM.—Error from Cloud district court; F. W. STURGES, judge. Action in replevin brought by The Weir Plow Company against Edward Marshall. Judgment for plaintiff. Defendant brings the case to this court. Reversed. The opinion herein, filed July 9, 1896, states the material facts.

*A. H. Ellis,* and *W. W. Caldwell,* for plaintiff in error.

*I. A. Rigby,* and *W. F. Guthrie,* for defendant in error.

The opinion of the court was delivered by

CLARK, J.: This is an action of replevin brought in the court below by the Weir Plow Company, a corporation, to recover from Edward Marshall the possession of certain personal property, consisting principally of wagons, and agricultural implements, which were detained by the defendant as sheriff of

Cloud county under and by virtue of certain attachments levied thereon at the instance of several creditors of one L. A. Bartlett, who was at that time engaged in the agricultural implement business at Concordia, in said county. The plaintiff claimed to be the absolute owner of the property in controversy, and that Bartlett held it as its agent at the time of the levy of the attachments. The evidence shows that the plaintiff was a manufacturer and dealer in agricultural implements, and that on January 27, 1888, it entered into two contracts with Bartlett with reference to certain classes of that kind of property. The contracts as signed by Bartlett and the agent of the company are wholly in print, save the signatures thereto and as hereinafter stated. One of these contracts related solely to certain goods listed in what is in the record denominated "a blue-list book," which goods were manufactured by parties other than the plaintiff, but which were handled by it. By the terms of this contract, the plaintiff agreed that it would deliver to Bartlett goods listed therein, to be by him sold on commission at the prices therein named, the proceeds thereof to be paid to the plaintiff in cash and purchaser's notes, payments of the latter to be guaranteed by him, the plaintiff reserving the right to revoke the contract at any time. The other contract related solely to goods listed in what is termed a "red-covered book," which was printed partly in red ink and partly in blue ink, and were goods manufactured by the plaintiff. On the opposite page to the one setting forth the printed contract appears the following written indorsement:

"All blue-list goods furnished L. A. Bartlett are to be settled for by his note due December 15, 1888, with interest at 8 per cent. from July 1, 1888, and

this note to be secured by a deposit of farmers' notes drawing 10 per cent. interest in First National Bank of Concordia, Kansas, receipts for said collaterals to be sent to the Weir Plow Company, and collections upon said collaterals to be indorsed upon Mr. Bartlett's note.   Contract on opposite page to govern settlement for all other goods than blue-list goods described herein.''

The evidence shows that some of the goods in controversy were of the same class as those described in the "blue-list book," and also those printed in blue ink, as well as those printed in red-ink in the "red-covered book."   The plaintiff claimed that at the time these contracts were executed certain manufacturers and wholesale dealers, including the plaintiff, had entered into a combination with each other for the purpose of regulating the manner in which certain classes of agricultural implements should be placed upon the market, and had organized what is termed a "plow association," and that the plaintiff had agreed with such association that it would not dispose of the goods of its own manufacture, which were listed in blue ink in the "red-covered book," upon commission, or otherwise than upon an absolute sale, and that the written stipulation above referred to, which was entered on the page opposite the printed contract, was there inserted solely for the purpose of misleading any member of that association should a claim be made that such goods were being delivered to Bartlett for sale upon commission, and that in fact that stipulation was not intended by either Bartlett or the plaintiff to be treated as a part of the agreement between them; but that the actual agreement is expressed in the printed form of the contract by them executed.   This the plaintiff attempted to establish upon the trial by the testimony of L. A. Starr, who

signed the contract as agent for the plaintiff, but his testimony shows that he had no actual knowledge of the existence of the "plow association"; that he did not insert this writing in the contract, and that it was all prepared by the manager of the company at Kansas City. He testified, however, that it was his understanding that there was such an association, and that this stipulation was inserted for the purpose of misleading the parties connected therewith should the plaintiff ever be called upon to show this contracts, and he also testified, in answer to a direct question of plaintiff's attorney, that Bartlett knew that such was the purpose in inserting that stipulation.

This is all the evidence introduced bearing upon this question, and it was admitted over proper objections interposed by the defendant. These printed contracts evidenced an agreement between the parties, by the terms of which the plaintiff obligated itself to furnish to Bartlett certain goods which the latter should endeavor to sell to his customers, and to account to the plaintiff for the proceeds thereof; but by inserting the writing above set out, one of these contracts was so changed as to amount to an agreement on the part of the plaintiff to sell to Bartlett certain goods therein described at certain fixed prices, the defendant, however, reserving the absolute right to revoke either or both contracts at any time it might deem it expedient to do so. No goods were ordered at the time they were executed, nor is there any competent evidence in the record that any goods were subsequently ordered from the plaintiff in pursuance of these contracts, but the record shows that some time after their execution Bartlett ordered goods from the plaintiff, but what goods were so ordered, or the value thereof, or whether the identical goods in con-

troversy were in fact delivered to Bartlett by the plaintiff, is mere speculation.

These contracts related solely to goods to be delivered during the year 1888.   Starr testified that the last time he invoiced this stock was in December of that year.   That invoice was not offered in evidence, nor is there anything to show that all of the goods in controversy were on hand at that time.   The plaintiff introduced in evidence a letter written by Bartlett to the plaintiff in September, 1888, in which he made a statement of the stock then on hand.   This list did not include some of the property now claimed by the plaintiff, of the value of $400, and the record does not show that any goods were ordered from the plaintiff after that statement was made, and Starr testified that he sent in no orders after that date.   These contracts also provided that Bartlett might at any time become a purchaser of any or all of the goods shipped to him, upon payment therefor.   The attachments were not levied until June, 1889, and there is nothing in the record tending to show that Bartlett did not in fact purchase these goods, or some of them at least, before the attachments were levied.   It is true that Starr, in answer to plaintiff's question as to whether or not Bartlett, between the dates of the contracts referred to and the date of the levying of the attachments, made any statements to him or informed him in any way as to who was the owner of the goods in controversy, testified that " he always recognized them or treated them as the Weir Plow Company's goods," and to a further question as to whether Bartlett, between the dates named, made any claim that he was the owner of any of the goods described in the red-covered book, he answered, " No, sir ; he always acknowledged the ownership in the Weir Plow Company."    But the

court should have sustained the defendant's motion to strike out the answers "as not being responsive to the questions asked, being conclusions of the witness, and incompetent." Starr was the only witness examined at the trial, and, instead of detailing to the jury the facts relative to the matters in controversy and the circumstances surrounding the transactions between the parties, he was permitted, over the repeated objections of the defendant, to testify to his own conclusions as to what such facts and circumstances would tend to show, and also to answer several leading questions propounded to him which assumed the existence of certain facts which were in dispute, and which it was necessary for the plaintiff to establish in order to entitle it to a verdict in its favor. In fact, the greater part of his testimony was incompetent.

Counsel for defendant in error say that "if the competent testimony proved the plaintiff's case, then the questions attempted to be raised by the plaintiff in error as to the propriety of the rulings of the court as to the introduction of evidence are immaterial," and that "no amount of incompetent testimony could have prejudiced the defendant if the competent testimony which defendant did not attempt to contradict proved plaintiff's title to the goods in controversy." We cannot give our unqualified assent to these propositions. We do not think a trial court would commit reversible error in overruling a motion for a new trial which was based solely upon the ground that incompetent, irrelevant and immaterial testimony had been admitted in evidence where the same verdict must necessarily have been returned had such testimony been excluded. But where incompetent evidence is admitted at the instance of the prevailing party, and

different conclusions might reasonably be drawn from the competent evidence in the case, a new trial should be granted. And if upon an examination of the record by this court a fair presumption arises that, had the recognized rules governing the admission of evidence been adhered to the result might have been otherwise, and a motion for a new trial is overruled, which ruling is assigned for error in this court, a judgment rendered on the verdict returned by the jury should not be permitted to stand. In this case, had the verdict been in favor of the plaintiff in error, this court could not say that there was not sufficient evidence to support it. The burden of proof was on the plow company to establish its ownership of the property. Upon such ownership rested its right of possession. The plaintiff in error was entitled to have that question fairly tried by a jury. Several of the special findings of fact are without support save this incompetent testimony, and its admission was highly prejudicial to the plaintiff's rights. In view of what has been said, we do not deem it necessary to pass upon the other errors to which our attention has been called.

The judgment will be reversed, and a new trial awarded.

All the Judges concurring.