## WHITE *v.* SOUTHERN RAILWAY COMPANY.

1. In a suit against a railway company to recover damages for the homicide of a passenger, it is proper to disallow an amendment to the plaintiff's petition when the allegations thereof need no amplification, and the only additional matter sought to be introduced by way of amendment is the assertion that the defendant company owed to the passenger a legal duty the non-observance of which could in no way have brought about or contributed to the injury of which complaint is made.

2. Interrogatories which have not been properly executed and returned into court can not, without an order authorizing steps to be taken to have the same re-executed and returned, be lawfully taken out of the office of the clerk by counsel and sent back to the commissioners with instructions to make another return of them to the court.

(a) In view of the admissions made in open court by plaintiff's counsel, the depositions were incompetent evidence.

(b) That the defendant did not in writing except to the improper execution and return of the interrogatories and serve the plaintiff with the notice prescribed by statute afforded no reason, under the facts appearing, why the court should have declined to suppress the depositions.

3. A narrative as to the circumstances under which a person was injured in alighting from a moving train, given by him a half hour or more after he was hurt, to persons arriving on the scene, is not admissible as a part of the res gestæ of the occurrence. Nor can a statement as to what occurred, made by him on the following day to an agent of the defendant, who reduced the statement to writing, be regarded as competent evidence.

4. The uncontradicted evidence submitted by the defendant company demanding the finding which the jury returned in its favor, the plaintiff was not entitled to a new trial, irrespective of whether the court correctly charged the jury as to the law governing the case.

Argued May 17,—Decided June 16, 1905.

Action for damages. Before Judge Reagan. Monroe superior court. October 1, 1904.

The plaintiff below, Carrie White, brought an action against the Southern Railway Company to recover damages for the homicide of her son, Titus White, who at the time of his death was nineteen years of age. The allegations of fact on which the plaintiff relied for a recovery were as follows: On or about January 7, 1901, Titus boarded one of the passenger-trains of the defendant company at Dames Ferry, and, after the train started, informed the conductor that he wished to be put off at a place called the coal chute, about seven miles north of Dames Ferry, where the company was in the habit of taking on and letting off passengers. The conductor agreed to put him off at the coal chute, as did also the porter of the train. Plaintiff's son was un-

23

acquainted with the location of the stations and the distance between them. The train stopped at the coal chute and started on again without any of the company's officials advising Titus of the fact that the coal chute had been reached, and without his knowing it; and when the train started to running again, the conductor informed him that the coal chute had been reached, and told him to get off the moving train. He accordingly got off the train, not knowing how fast it was running, being governed entirely by the conductor's advice and command. While in the act of alighting the plaintiff's son was thrown violently to the ground in the darkness, and the moving train passed over his leg and arm, and he was so grievously wounded that he died on the following day. The negligence charged against the company was, (1) that the servants having charge of its train carelessly and negligently failed to stop it long enough at the coal chute to put off plaintiff's son safely or to afford him an opportunity to alight; (2) that the conductor improperly directed him, an ignorant country boy, to get off the moving train, which was "unusual negligence," in that the conductor and porter were thoroughly familiar with the road in that locality and with the surroundings and the speed of the train, whereas plaintiff's son had no such knowledge and was relying absolutely upon the direction and will of the conductor, in whom he trusted and whose duty it was to see that he got off the train safely; and (3) in addition to such gross negligence, the defendant company was also negligent in failing to exercise towards plaintiff's son that extraordinary diligence which the law imposes upon it. At the trial the plaintiff offered an amendment to her petition, wherein she reiterated the statement that her son was a passenger on the train and the company was under a duty to put him off safely at the coal chute or afford him an opportunity to alight with safety, and wherein she further alleged "that the defendant company being advised that Titus White desired to get off at the chute, it was its duty to afford him a safe place to get off, and to select such a safe place and to see to it that he did get safely off," but nevertheless the defendant negligently started its train without giving him an opportunity to safely alight, and he was thrown from the train and killed. The court declined to allow this proffered amendment, for the reason that its allegations were

substantially covered by those in the original declaration, "except the one that it was defendant's duty to afford a safe place to alight at," which was demurrable. To this ruling the plaintiff excepted pendente lite. A verdict in favor of the defendant was returned, and the plaintiff excepts also to the overruling of her motion for a new trial. The grounds of the motion will appear from the opinion.

*M. W. Harris, J. R. Cooper, W. C. Lane,* and *Samuel Rutherford,* for plaintiff. *Dessau, Harris & Harris,* for defendant.

EVANS, J. (After stating the facts.) 1. No harm resulted to the plaintiff from the refusal of the trial judge to allow the amendment to her petition, the allegations of which needed no amplification. The only new matter sought to be introduced by way of amendment was the assertion that the company owed to her son the duty of providing a safe place at which he could alight; that it failed to observe this duty is not alleged. Even regarding the company's coal chute as a regular station at which it received and discharged passengers, its failure to provide a place where passengers could safely alight in no way brought about or contributed to the injury received by him. On the contrary, the plaintiff alleges that the train was negligently started before her son was given an opportunity of leaving it in safety, and that his injury was caused by the negligent act of the conductor in directing him to get off the train while it was in motion. The allegation that the company owed him the duty of furnishing a safe place at which he could alight was wholly irrelevant and immaterial.

2. Upon the call of the case counsel made to the court a statement to the following effect: Certain interrogatories which the plaintiff had sued out for S. A. Alexander, of Mississippi, were returned to the superior court of Monroe county and were received by the clerk of that court. Upon the request of plaintiff's counsel the clerk mailed them to him at Macon, Ga. Upon receiving the package counsel discovered that the commissioner who had made the return of the interrogatories had not signed and sealed the same upon the back of the envelope, and that the receipt of the postmaster at Forsyth, Ga., was not signed as written out. Thereupon counsel returned the package to the

postmaster in Mississippi from whom it came, with the request that the commissioner be required to sign and seal same on the back. Subsequently the clerk of the court received the interrogatories by due course of mail, the package being signed by the postmaster at Forsyth and the names of the two commissioners appearing upon the back of the envelope with their seals. Before receiving the interrogatories from the clerk, counsel had taken an order from the judge to open the same, but he did not open the package while in his hands, nor was anything written thereon. At the conclusion of this statement the court, on motion of the defendant, held that the interrogatories could not be received in evidence, and announced that they would be suppressed, because they had not been returned under an order of the court for correction and re-execution. Counsel for the plaintiff then stated in his place that he had construed the order to open the interrogatories as granting leave to take them out of the clerk's office. The court replied that this was an unauthorized liberty and an unwarranted construction of the order. Complaint is made that the plaintiff was thus unjustly deprived of the benefit of the interrogatories, inasmuch as " no contention was made by anybody that the interrogatories had been opened, changed, or tampered with after they had been re-executed." It was certainly not incumbent on the defendant to make any charge of fraud which could not, because of the defendant's lack of knowledge of the facts, be substantiated. The defendant was informed that counsel for the plaintiff had, without right, procured the clerk to mail the interrogatories to him, and had then, upon discovering that they had not been properly returned to the court, started them off on an unauthorized journey to Mississippi. Into whose hands they actually fell or what transpired during their sojourn in that State the defendant was not expected to know, nor was the counsel for the plaintiff in a position to say. It did appear that the interrogatories had not been executed and returned into court conformably with law. This fact was all-sufficient to warrant the court in suppressing them; for until properly executed and returned they could not be used as evidence. Counsel, upon ascertaining that they had not been returned into court in accordance with law, had the choice of two courses: that which the court ruled he should have pursued,

and that which he followed. He chose the wrong one. The question is not whether any fraud was perpetrated in the present instance, but whether such an inexcusable disregard of the prescribed practice for securing the testimony of witnesses by interrogatories can in any case be countenanced. In view of the opportunities for fraud which would be afforded if so grave a departure from the practice to be observed were tolerated, no doubt should be entertained that the ruling of the trial judge was eminently right and proper. Counsel for the plaintiff insisted before this court, however, that the defendant had no right to move to suppress the depositions, not having complied with the provisions of the Civil Code, § 5314, which declares that "All exceptions to the execution and return of commissions must be made in writing, and notice thereof given to the opposite party." Where a party fails to comply with the requirements of this section, he can not, of course, complain that the trial court declines to suppress interrogatories because of want of proper execution. *Galceran* v. *Noble,* 66 *Ga.* 367; *Langford* v. *Driver,* 70 *Ga.* 589. But in the present case, counsel for the plaintiff invoked a decision of the court as to the propriety of treating the depositions as trustworthy evidence, waiving all benefit of the provisions of the statute with respect to notice of exceptions which the opposite side might have presented. Counsel admitted he had so far meddled with the depositions as to send them into a sister State and secure upon the package the indicia of a legal execution and return which had not in point of fact been had in the first instance, and he voluntarily called down upon his client the just wrath of the court, which was warranted of its own motion to thereupon exclude the interrogatories. The conduct of the counsel in thus bringing to the attention of the court the truth with regard to the matter was straightforward and manly. That the result of so doing operated to the prejudice of his client is, perhaps, something to be regretted, but not something which affords cause for reversing the decision of the trial court.

3. The fact was developed by the plaintiff's evidence that after the train on which her son had taken passage had proceeded on its journey after having stopped at the coal chute, he was found lying near the track and was seriously injured. The plaintiff sought to show by two witnesses, who arrived on the

scene some half an hour after the train had departed, that the injured man told them he had gotten on the train at Dames Ferry and had informed the conductor he wanted to get off at the coal chute, and that the way in which he received his injury was that the conductor had hurried him to get off the moving train — had pushed him and told him to get off "damned quick," — and he obeyed the order and was injured. The plaintiff also offered to prove, as a part of the res gestæ of the occurrence, the statement made by her son on the following morning, in the presence of a physician and an agent of the company who reduced his statement to writing, concerning the manner in which he got hurt. As a matter of course, the court ruled that none of this evidence was admissible. The court also declined to require either the company's agent or its counsel to produce the written statement so that plaintiff might introduce it in evidence; and the court rightly declined to do so. In reply to the complaint which the plaintiff makes of these rulings, it is only necessary to cite a few of the many instances in which this court has expressly held that such declarations are incompetent. *Augusta and Summerville R. Co.* v. *Randall*, 79 *Ga.* 304; *Holland's* case, 82 *Ga.* 257; *Roach* v. *R. Co.*, 93 *Ga.* 785; *Electric Ry. Co.* v. *Carson*, 98 *Ga.* 652; *Newsom* v. *Georgia Railroad*, 66 *Ga.* 57; *Poole* v. *Ry. Co.*, 92 *Ga.* 337; *Weinkle* v. *R. Co.*, 107 *Ga.* 367; *W. & A. R. Co.* v. *Beason*, 112 *Ga.* 553. The writing made by the company's agent had no evidentiary value whatsoever. *Carroll* v. *Ry. Co.*, 82 *Ga.* 452 (4), 473.

4. The evidence introduced in behalf of the plaintiff failed to establish any of the specific acts of negligence alleged in her petition, or to disclose under what circumstances her son met with his injuries. She therefore necessarily had to rest her case entirely upon the presumption of negligence raised by law from the fact that he was injured by the running of the defendant's train. Civil Code, § 2321. The company submitted evidence bringing to light the following facts: The coal chute was not a station or a regular stopping-place, though passengers were permitted to get off when trains stopped for coal or water. On the evening of January 7, 1901, a northbound passenger-train arrived at the coal chute shortly before 8 o'clock, and stopped there four or five or possibly as long as seven minutes. The engineer had charge of the stopping and starting of the

train at the coal chute, it not being a station. After the train came to a standstill, the conductor assisted a gentleman, a lady, and a child to alight, at the same time warning them not to go on the main line, as a freight-train was expected to pass at any moment. The conductor then went inside the second-class car, sat down, and began reading a newspaper. He was approached by a negro passenger who had a ticket from Dames Ferry to Juliette, a station a mile beyond the coal chute, and was asked if that place was the coal chute; the conductor said "yes" and the negro then said he wanted to get off there. The conductor told him "all right," to get off if he wished, but he had better be in a hurry. The train was at the time standing still. The negro immediately went out upon the platform, apparently for the purpose of getting off, and was not afterwards seen. He appeared to be an able-bodied man, twenty-two or twenty-three years of age, and capable of taking care of himself. The ground was level at the point where the car was standing, and he could have alighted therefrom in safety within half a minute. A few minutes after the negro left the conductor the passenger-train "pulled up" to let the freight-train pass, and in a few moments afterwards proceeded on its journey. The statement of the conductor as to the conversation inside the car between him and the negro was corroborated by the testimony of the only other occupants of the car, a colored preacher and the newsboy, both of whom testified that the conductor merely cautioned the negro by telling him he had better get off pretty quick, and one of whom added that the conductor displayed no anger or impatience towards the negro. After this conversation, the car remained motionless for from one to two minutes. The front end of it was sixty-five feet distant from the coal chute, opposite which the engine and tender had been stopped for the purpose of taking on coal, and under the apron of which the plaintiff's son was found shortly after the departure of the train. There was at that point blood on the track, and also on a post which stood within a distance of fourteen inches of the point to where the eaves of a passing passenger-coach would extend. Had the injured man been on the bottom step of a car, leaning outward, after the train was started, he might have been knocked off by coming into contact with this post.

No attempt was made by the plaintiff to discredit any of the defendant's witnesses; and this being so, and their testimony fully exonerating it and overcoming the presumption of negligence upon which the plaintiff relied for a recovery, a verdict in her favor would have been ·wholly unwarranted. *W. & A. R. Co.* v. *Beason,* 112 *Ga.* 553, 556, and cit. And the verdict returned by the jury being demanded by the evidence, it is unnecessary to consider whether the charge of the court is open to any of the criticisms made upon it, or whether it fully covered all the issues in the case. *Peoples Savings Bank* v. *Smith,* 114 *Ga.* 185. For the trial judge to have granted a new trial would have been an abuse of discretion.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*