SARAH E. LOWRY, Admx., *v.* SOUTHERN RAILWAY
COMPANY.

*(Knoxville.* September Term, 1906.)

1. **CHARGE OF COURT.** No reversal for harmless error.

No reversal will be granted for harmless error in the charge of
the trial judge, where the supreme court can see that the
party complaining of such error was not injured thereby.
(*Post, pp.* 514-520.)

See headnote 5.

Numerous cases cited and approved in the opinion, on pages
514-520.

2. **SAME.** Same. Courts, procedure, and rules for attainment of
justice, and not for its prevention.

Courts were instituted for the administration of justice, and the
procedure and rules of practice obtaining therein were design-
ed for the same purpose, and when the judges can clearly
perceive and are fully satisfied that the jury were not influ-
enced by the errors complained of, and that the right under
the law has been attained, they should not permit the rules
and procedure designed for the advancement of justice to be
used for its prevention. (*Post, p.* 520.)

3. **LAW.** Spirit must not be subordinated to the letter.

The spirit of the law must not be subordinated to the letter,
nor the seal of justice to its form. (*Post, p.* 520.)

4. **TECHNICALITIES.** To serve ends of justice, not to thwart
justice.

Technicalities are instruments in the hands of justice to serve
her ends, not cords to bind her. (*Post, p.* 520.)

Lowry v. Railroad.

5. **CHARGE OF COURT.** No reversal for harmless error. Case in judgment.

Errors in the charge of the trial judge in leaving to the jury the question of the defendant railroad's compliance with the statutory precautions for the prevention of accidents on railroads, where it was the law of the case established by the supreme court in disposing of the demurrer to the evidence, that such precautions had been complied with, and in giving instruction on nominal damages, and in refusing a proper request for an instruction authorizing punitive damages, are harmless and innocuous, where there was gross negligence on the part of plaintiff's intestate, an intelligent boy nine years old who, though accustomed to trains and knowing the danger of being on the railroad track, was killed by springing immediately in front of a rapidly moving train, in attempting to cross ahead of it, when he must have seen and heard it, although the defendant was guilty of gross negligence in running a train, in the dusk of evening, without a headlight or lookout, at a speed of thirty-five miles an hour, within a town and through a deep cut, near a path leading into it, where children were accustomed to play. (*Post, pp.* 510-522.)

See headnote 1, and reference to citations there made.

6. **NEW TRIAL.** Bill of exceptions must show that it contained all the evidence heard upon motion for new trial.

Assignment of error for the refusal of a new trial by the trial judge for a remark claimed to have been made by a juror to his fellows, during their consideration of the case, cannot be considered, where the bill of exceptions does not show that it contained all the evidence heard upon the motion for a new trial. (*Post, p.* 523.)

Cases cited and approved: Insurance Co. v. Crockett, 7 Lea, 725; Thomas v. State, 109 Tenn., 684, 687, 688; Ransom v. State, 116 Tenn., 355.

FROM McMINN.

Appeal from the Circuit Court of McMinn County.—
GEORGE L. BURKE, Judge.

GEORGE G. WILLIAMS, for plaintiff.

BURKETT, MILLER & MANSFIELD, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

This case has been tried many times in the court below
and three times in this court. There was a verdict and
judgment at the December term, 1905, in the circuit
court of McMinn county, and a decree of $900 in favor
of plaintiff. There was an appeal by the plaintiff to this
court, because the amount allowed was not sufficient,
and errors have been assigned on various grounds.
There are eleven assignments of error. All of these but
the last are upon the charge of the court.

Assignments 1 to 6, inclusive, refer to and complain
of the charge as given; and Nos. 8, 9 and 10 refer to re-
quests refused.

The action was brought to recover damages for the
death of a boy nine years old, who was struck and killed
by the engine of the defendant company as he was cross-
ing the track in front of the engine.

In those portions of the charge to which no exceptions were taken, the trial judge instructed the jury as follows:

"This is a suit for damages, brought by the plaintiff, Sarah J. Lowry, administratrix of her son, against the defendant, Southern Railway Company, for the wrongful killing of her son, Charles Lowry. That deceased was killed as alleged by the defendant company is not denied. The question of liability for the said killing has been formerly adjudicated in this cause, and the defendant company held to be liable. You have been chosen and qualified to ascertain and fix the amount of damages for the said wrongful killing, and this you can fix at any amount warranted by the evidence and the law governing in the case, not exceeding the amount laid in the declaration, to wit, $1,999.99. The right to recover in this action is predicated upon the alleged negligence of the defendant company as causing the accident that resulted in the death of plaintiff's intestate, and, as aforesaid, it has been held and adjudged by a superior court in this case that the negligence of the defendant was such as to make the defendant liable in this case, but the amount of damages has not been adjudicated; but that is a matter you have been sworn to ascertain and fix, and which you must do under the evidence and law governing in the case, as charged you by the court.

"The rule of law is that where, in a case of this character, the negligence of the defendant was the prime and proximate cause of the injury, or the defendant fails to

Lowry v. Railroad.

observe some statutory requirement, as hereinafter explained, its liability is fixed; but it is the duty of the jury to look to the record to ascertain whether the injured party was negligent, and, if he were negligent, such negligence goes in mitigation of the damages, and the extent of such mitigation should be governed by the extent of the negligence of the party injured—that is, in proportion to the extent such negligence contributed to the injury."

He also instructed the jury as follows:

"The true measure of damages would be the value of the life of the deceased, upon a consideration of his expectancy of life, looking to his age, health, strength, and to his capacity for labor and earning money by labor, skill in any art, trade, profession, occupation, or business, considering the fact that 'expectancy of life' is at the most problematical. You may, in fixing the damages, likewise look to any physical and mental pain suffered by the deceased and any expense incurred in consequence of the injury."

In the matter objected to, covered by assignments 1 to 6, inclusive, his honor told the jury that the railroad company must comply with the statutory precautions, mentioning them, such as keeping a lookout, having a headlight, and taking every precaution to prevent an accident; also the duty to blow the whistle at a distance of a mile from the corporate limits. He then told them that a failure to comply would make the liability absolute, notwithstanding the negligence of the party

injured was so gross as to be the prime and proximate cause of the injury, and notwithstanding the fact that, had the statutory precautions been observed, the accident could not have been avoided.

He then continued:

"But in such cases, where the negligence of the party injured was so gross as to be the prime and proximate cause of the injury, such negligence would mitigate the damages to that of mere nominal damages and a sum sufficient to cover the costs, as $1, for instance."

The charge then continued:

"Whether the defendant was observing the statutory precautions on this occasion is a question for you to settle under the evidence as well as whether, if not observed, such negligence caused the accident, as well as whether, had they been observed, the accident could have been avoided."

He charged that all the precautions must be observed; but if they were not observed, and such failure did not contribute to the injury, but that, notwithstanding such failure to observe each and every one of these precautions, the accident would not and could not have been avoided—that is to say, was the result of the gross negligence of the deceased, and, on the part of the defendant, was an unforeseen and unforeseeable and unavoidable accident—the defendant would only be liable for nominal damages."

He also charged:

"On the contrary, if you find the statutory precau-

Lowry v. Railroad.

tions were not observed, and such failure was the prime
and proximate cause of the injury, the defendant would
be liable for a greater amount than mere nominal dam-
ages, and the deceased's negligence would go only to
the mitigation of the damages, and the extent of the
mitigation should depend upon the extent of the negli-
gence chargeable to the deceased on the occasion and
under the surrounding circumstances."

The trial judge committed error in leaving it to the
jury to say whether the statutory precautions had been
complied with. That matter was settled by the court
on a former trial in disposing of the demurrer to the
evidence. For the rest, the substance of the instruc-
tions was that if failure to comply with the statutory
precautions was not the proximate cause of the injury,
but the gross negligence of the deceased was such cause,
then there could only be recovered nominal damages;
but, if failure to comply with such precautions was the
proximate cause, then the company would be liable for
a greater amount than nominal damages.

The tenth assignment complained of the refusal to
charge the following request upon the subject of punitive
damages:

"You may allow punitive or exemplary damages, if
you believe from all the facts and circumstances that
defendant was guilty of gross negligence or acted in
reckless disregard of the safety of the child."

As already said, we think the trial judge committed

117 Tenn—33

error in submitting to the jury the question whether the statutory precautions had been complied with. It may also be conceded that there was technical error in what was said upon the subject of nominal damages; also in refusing to grant the request for instructions upon the subject of punitive damages. After making these concessions, the question is, were they reversible errors, as having wrought harm to the plaintiff's cause; or were they, under the facts shown in the record, merely innocuous?

The rule is that, although this court may be of opinion in a given case that the trial judge committed error, in his charge, no reversal will be granted therefor, if we can see that the party complaining of such error was not injured thereby. This rule is supported by a long line of cases (*Neddy* v. *State*, 8 Yerg., 249; *Webster* v. *Fleming*, 2 Humph., 518; *Porter* v. *Woods*, 3 Humph., 56, 39 Am. Dec., 153; *Mitchell* v. *Churchman's Lessee*, 4 Humph., 218; *Rosson* v. *Hancock*, 3 Sneed, 435; *Steinwehr* v. *State*, 5 Sneed, 586; *Mt. Olivet Cemetery Co.* v. *Shubert*, 2 Head, 116; *Myers* v. *Bank*, 3 Head, 331; *Davidson* v. *Manlove*, 2 Cold., 346, 348; *Hatfield* v. *Griffith*, 1 Lea, 300; *Malone* v. *Searight*, 8 Lea, 91; *Jones & Son* v. *Cherokee Iron Co.*, 14 Lea, 157; *Southern Oil Works* v. *Bickford*, 14 Lea, 651; *Transportation Co.* v. *Block Bros.*, 86 Tenn., 393, 6 S. W., 881, 6 Am. St. Rep., 847; *Dale* v. *Continental Insurance Co.*, 95 Tenn., 38, 52, 31 S. W., 266; *Oliver* v. *Nashville*, 106 Tenn., 273, 278, 281, 61 S. W., 89), and it is but a restatement in

other language of the provision contained in Shannon's Code, sec. 6351, which reads as follows: "No judgment, decision or decree of the inferior court shall be reversed in the supreme court unless for errors which affect the merits of -the judgment, decision or decree complained of."

Other applications of the same principle are found in the following cases, viz.: *Wilson* v. *Smith,* 5 Yerg., 381, 409; *Clark* v. *Rhodes' Adm'r,* 2 Heisk., 208; *Sellers* v. *Sellers,* 2 Heisk., 431; *Robb* v. *Parker,* 4 Heisk., 58, 66; *Draper* v. *State,* 4 Baxt., 254; *Maddin* v. *Head,* 1 Lea, 664; *Davis* v. *Davis,* 6 Lea, 543; *McAdams* v. *State,* 8 Lea, 463; *Robinson* v. *Baker,* 10 Lea, 402, 405; *Memphis Tel. Co.* v. *Hunt,* 16 Lea, 460, 1 S. W., 159, 57 Am. Rep., 237; *Turner* v. *State,* 89 Tenn., 549, 561, 562, 15 S. W., 838. And for still other and different applications of the same principle, see *Allen & Hill* v. *Shanks,* 90 Tenn., 383, 384, 16 S. W., 715, approving *Boyd* v. *Sims,* 87 Tenn., 771, 11 S. W., 948; *Minton* v. *Stahlman,* 96 Tenn., 106, 34 S. W., 222; *Telegraph Co.* v. *Mellon,* 100 Tenn., 430, 45 S. W., 443; *Glenn & Sons* v. *Southern Express Co.,* 86 Tenn., 594, 8 S. W., 152; *Watkins* v. *Clifton Hill Land Co.,* 91 Tenn., 684, 20 S. W., 246; *Jonas* v. *Noel,* 98 Tenn., 445, 39 S. W., 724, 36 L. R. A., 862; *Railroad* v. *Abernathy,* 106 Tenn., 722, 728, 64 S. W., 3. And for applications of the same principle to criminal cases, see *Wilson* v. *State,* 109 Tenn., 167, 179, 70 S. W., 57, and cases there cited; *Railroad* v. *Naive,* 112 Tenn., 239, 250, 79 S. W., 124, 64 L. R. A., 443.

The same rule prevails in other jurisdictions, and, indeed, is general in this country and in England. *Cavazos* v. *Trevino,* 6 Wall. (U. S.), 773, 785, 18 L. Ed., 813; *Mining Co.* v. *Taylor,* 100 U. S., 37, 25 L. Ed., 541; *Hanks* v. *Neal,* 44 Miss., 212, 227, 228; *Head* v. *State,* Id., 731; *Durrah* v. *State,* Id., 789, 797; *Garrard* v. *State,* 50 Miss., 147, 153; *Dever* v. *Akin,* 40 Ga., 423, 429; *White* v. *Sou. Ry. Co.,* 123 Ga., 353, 360, 51 S. E., 411; *Hollingsworth* v. *Howard,* 113 Ga., 1099, 39 S. E., 465; *Buchi* v. *Seitz,* 21 South., 576, 39 Fla., 55; *Boon* v. *State,* 42 Tex., 237; *Moore* v. *Willard,* 30 S. C., 615, 9 S. E., 273; *Ruffin* v. *Overby,* 105 N. C., 78, 86, 11 S. E., 251; *Phillips* v. *Phillips,* 81 Ky., 328, 331, 332; *Danville Bank* v. *Waddill,* 27 Grat. (Va.), 448; *Binns* v. *Waddill,* 32 Grat. (Va.), 592; *Mason* v. *Harper's Ferry Bridge Co.,* 20 W. Va., 223, 239, 240; *Moore* v. *Lindell Ry. Co.,* 176 Mo., 528, 75 S. W., 672; *Lomax* v. *Southwest Missouri Electric Ry. Co.,* 95 S. W., 945, 119 Mo. App., 192; *Ashley* v. *Foreman,* 85 Ind., 55, 63; *Baker* v. *Carr,* 100 Ind., 330, 333; *Ritter* v. *Schenk,* 101 Ill., 387; *McElroy* v. *Eau Claire Lumber Co.,* 57 Wis., 189, 190, 191, 15 N. W., 132; *Rooney* v. *Milwaukee Chair Co.,* 65 Wis., 397, 399, 27 N. W., 24, and cases cited; *Marshall* v. *Weir Plow Co.,* 45 Pac., 621, 4 Kan. App., 615; *Aske* v. *Duluth & I. R. R. Co.,* 83 Minn.,197, 85 N. W., 1011; *Martin* v. *Hill,* 3 Utah, 157, 2 Pac., 62; *Yankton County* v. *Rossteuscher,* 1 Dak., 125, 46 N. W., 575; *Wall* v. *Livezay,* 6 Colo., 550; *Ullman* v. *McCormic,* 12 Colo., 553, 21 Pac., 716; *Romero* v. *Desmarais,* 20 Pac., 787, 5 N. M., 142; *Porter* v. *Peckham,* 44 Cal., 204; *B. & O. R. R. Co.* v. *Pumphrey,*

Lowry v. Railroad.

59 Md., 390, 402; *Wyckoff* v. *Runyon,* 33 N. J. Law, 107, 109, 110; *Bennett* v. *Austin,* 5 Hun (N. Y.), 536, 539, 540; *Spink* v. *New York, N. H. & H. R. Co.,* 26 R. I., 115, 117, 58 Atl., 499; *Dutch* v. *Bodwell Granite Co.,* 94 Me., 34, 38, 46 Atl., 787; *Ellingwood* v. *Bragg,* 52 N. H., 488; *State* v. *Meader,* 54 Vt., 126—cases wherein questions were made upon the charge of the court, or upon testimony offered and improperly admitted or refused. See, also, the following cases to same effect, wherein the question arose in respect of the jury: *State* v. *Taylor,* 20 Kan., 643, 646; *Roman* v. *State,* 41 Wis., 312, 317; *State* v. *Conway,* 23 Minn., 291; *Koehler* v. *Cleary,* 23 Minn., 325, 326; *Pettibone* v. *Phelps,* 13 Conn., 445, 35 Am. Dec., 88—and the following, wherein the question arose in respect of points merely technical: *McElhaney* v. *Gilleland,* 30 Ala., 183, 187, 188; *Way* v. *Langley,* 15 Ohio St., 392, 397, 398; *Blemer* v. *People,* 76 Ill., 265, 269.

In *Mason* v. *Harper's Ferry Bridge Co.,* supra, the supreme court of West Virginia said, in respect of errors committed in the charge.

"A new trial should be granted unless the court, upon an examination of the record and evidence, is clearly of opinion that the defendant could not possibly have been prejudiced by the erroneous instruction. 1 Gra. & Wat. on New Trials, 261, 262. But an erroneous instruction is no ground for a new trial if the verdict is correct under the law and facts. *Armstrong* v. *Keith,* 3 J. J. Marsh (Ky.), 153, 20 Am. Dec., 134. Again: 'Although

the charge is wrong, still if it does not control the jury, but they find contrary to it, and their finding is correct, it is not a ground for a new trial.' Id. 'A new trial will not be granted for a wrong instruction, provided the court can clearly see that the error could not have influenced the verdict.' 3 Gilmore, 202. In *Clay* v. *Robinson,* 7 W. Va., 348, Judge Haywood says: 'Where an instruction given at the instance of the plaintiff does not clearly propound the law, but it is manifest from the record that the defendant could not thereby have been prejudiced or injured, the appellate court will not reverse the judgment on account of such erroneous instruction.' 'An instruction which, upon the statement of the evidence, could not have injured the exceptor, is no ground for reversing the judgment.' *Beaty* v. *B. & O. R. Co.,* 6 W. Va., 388; *Danville Bank* v. *Waddill,* 31 Grat. (Va.), 469. 'A misdirection is always good for reversal, unless it can be plainly seen that the error could not have affected the jury. On the other hand, the converse of the proposition is equally true—that, if the appellate court is satisfied that the jury could not have been influenced by the misdirection, it will not, because of such misdirection, reverse the judgment.' The case of *Dinges* v. *Branson,* 14 W. Va., 100, belongs to a class of cases in entire harmony with those cited. The record then before the appellate court did not show that the instructions, if erroneous, could have affected the verdict; and the rule is the judgment will be reversed unless it affirmatively and clearly appears that the er-

roneous instruction could not have misled the jury. The burden of showing that the exception could not have been prejudicial rests upon the party at whose instance the erroneous instruction is granted." *Mason* v. *Bridge Co.*, 20 W. Va., 223, 239, 240.

In *Ellingwood* v. *Bragg,* supra, the supreme court of New Hampshire made the following observations upon the matters as affecting questions of evidence:

" 'Courts will not set aside a verdict on account of the admission of evidence which ought not to have been received, provided there be sufficient without it to authorize the finding of the jury,' said Mansfield, C. J., in *Hartford* v. *Wilson,* 1 Taunt., 12, 14. But we cannot indorse so broad a statement as that, contrary as it is to the current of authority, and evidently involving in its application immense practical difficulty. Jurors alone, and not courts at all, are to determine the weight of the evidence, and the court can never say what effect any fact that is relevant may have, or may have had, on the minds of the jury. *Edwards* v. *Evans,* 3 East, 451, 455. It would be an extremely dangerous usurpation of power to undertake such functions, and it can be only where a case has been clearly and indisputably made out, without the objectionable evidence that a new trial can be properly refused. See Hilliard on New Trials, 43, 44.

"Therefore, it was held in *Wright* v. *Tatham,* 7 Ad. & E., 313, that where improper evidence was received, and a verdict given for the party adducing it, the court will

grant a new trial, although there be other evidence to the same point in favor of the same party, unless they can clearly see that the improper evidence could not have weight with the jury, or that the verdict, if given the other way, would have been set aside as against evidence."

The foregoing are, in substance, in both classes of cases, the same views recognized by our own cases already cited.

The controlling thought is that the courts were instituted for the administration of justice, and the procedure and rules of practice obtaining therein were designed for the same purpose, and when the judges can clearly perceive and are fully satisfied that the jury were not influenced by the errors complained of, and that the right, under the law, has been attained, they should not permit the rules and procedure designed for the advancement of justice to be used for its prevention. The spirit of the law must not be subordinated to the letter, nor the soul of justice to its form. Technicalities are instruments in the hands of justice to serve her ends, not cords to bind her.

We shall now state the facts of the present case and apply the principle. The uncontroverted facts proven against the defendant below are as follows:

On the day stated in the declaration, the defendant company, upon a track within the corporate limits of the town of Athens, in the dusk of the evening, ran a train of cars at the rate of about thirty-five miles an

Lowry v. Railroad.

hour, without its headlight burning, through a deep cut and at a point about four hundred feet from the depot, near a path leading down into the cut, where children were accustomed to be seen, and on its track ran upon and killed plaintiff's intestate, Charlie Lowry. It is not shown that there was any one upon the lookout. If there had been a headlight, and any one upon the lookout, it is probable, or at least possible, that the child might have been seen running to the track before it reached it, and a blast of the whistle might possibly have deterred him; but, when he had actually entered upon the track, he was too close to the engine to be seen, or for any effort at that time to be made to put down the brakes or to do anything else to stop the train.

The uncontroverted facts showing contributory negligence on the part of the child are these: He was accustomed to trains and knew the dangers incident to being upon the track. In the evening in question he was on the track adjoining the main line, on which adjoining track a train of the Tellico Railway Company was backing out from the depot. The boy was following the backing train. As he was thus following along, the evening train on the line of the defendant company came down the main line from Knoxville to Athens. The boy, evidently desiring to go across the track before the train should pass, sprang immediately in front of it, and was in that manner struck and hurled from the track and killed. We cannot doubt that he both

saw and heard the train, that he knew the danger and took the risk, and thus lost his life. The boy was nine years old, healthy, and of the average intelligence for that age.

Under the facts stated, we think that both the railroad company and the deceased were guilty of gross negligence. In the case of an adult who had lost his life in the same manner, we think that the amount allowed would be far too much; but, after making due allowance for the immaturity of the childish intelligence, we think the intestate was guilty of very gross negligence, and that $900 was a sum of which his administrator ought not to complain under the circumstances. This was a sufficient sum to punish the railroad company for its negligence and to compensate for the loss of the child, after making a considerable deduction for the child's negligence.

We are of opinion, therefore, that the errors committed by the circuit judge did not injure the plaintiff's cause.

The portion of the charge complained of in the seventh assignment, concerning the harmonizing of evidence, was not applicable to the present case, but harmless.

As to the matter complained of in the eighth assignment, even if the criticism upon the charge there mentioned is a sound one, we think, under the circumstances, it was also harmless. The request made in the ninth assignment was not applicable to the facts of the case, and was correctly disallowed. We have already disposed of the tenth assignment.

Lowry v. Railroad.

The eleventh assignment concerns a complaint made in the motion for a new trial with respect to a remark which, it is claimed, was made by one of the jurors to his fellows, during their consideration of the case, to the effect that he had heard that, when the case was heretofore in the supreme court, it had been reversed because the amount allowed was too large. This assignment cannot be considered, because the bill of exceptions does not show that it contained all of the evidence heard upon the motion for a new trial. *Ransom* v. *State,* 116 Tenn., 355, 96 S. W., 953. The requirement in this respect is the same as that governing the presentation of the evidence submitted to the jury upon the issues. It has long been held by this court, and for the same reason, that, if there is any material evidence to support the finding of the circuit judge upon the facts, the court cannot disturb such finding; and we cannot know there was no such evidence unless the bill of exceptions shows that it contains all the evidence. See, on the general principle, *Thomas* v. *State,* 109 Tenn., 684, 687, 688, 75 S. W., 1025; *Insurance Co.* v. *Crockett,* 7 Lea, 725.

It results that the judgment of the court below must be affirmed.