MISSISSIPPI CENTRAL RAILROAD COMPANY v. WADE TURNAGE.

[49 South. 840.]

1. EVIDENCE. *Declarations touching pain and suffering. Personal injuries.*

In an action for personal injuries, non-expert witnesses may testify to declarations and expressions of present pain and suffering by the person injured.

2. APPEAL. *Improper argument. Exceptions.*

Alleged improper remarks by counsel in argument to the jury will not be considered on appeal where exception thereto was not taken at the time.

FROM the circuit court of Jefferson Davis county.

HON. ROBERT L. BULLARD, Judge.

Mrs. Turnage, appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment in plaintiff's favor defendant appealed to the supreme court.

Plaintiff sued for injuries received by her while attempting to board the passenger train of defendant. The injuries were alleged to have been caused by the gross negligence and carelessness of defendant's servants in starting the train while plaintiff, with her small baby in her arms, was on the steps of defendant's passenger coach attempting to get aboard. The declaration alleged that the flagman of the company saw plaintiff in this position and gave the signal to start the train and thereby started it suddenly, whereby plaintiff was thrown violently to the platform and severely bruised and injured, so that her health was broken. At the time of the trial, which was more than a year after the injuries were received, she still suffered from the effects of the fall.

The assignments of error were: First, that the judgment is excessive; second, improper remarks of counsel in making his

argument to the jury, which consisted of references to recoveries in other cases for injuries caused by railway accidents; third, admission of certain testimony as to injuries and suffering.

*Jeff. Truly,* for appellant.

*R. N. & H. B. Miller; Miller, Livingston & Milloy,* and *J. O. Cowart,* for appellee.

[The briefs of counsel in this case could not be found when the record reached the reporter, hence no synopsis of them is given.]

MAYES, J., delivered the opinion of the court.

Counsel for appellant very frankly concedes that the questions in this case were properly questions to be submitted to the jury, and further concedes that the verdict of the jury must be affirmed, unless there was error committed by the trial court in the admission of certain testimony, which we shall notice in this opinion a little later, or unless the court should hold that the verdict was excessive, or that the case should be reversed on account of improper argument of counsel for appellee. Thus, by concession of counsel, the questions are narrowed down to three; the prime one being the assignment of error which asks for a reversal on account of the admission of improper evidence.

The testimony objected to is the testimony of McNeese, Holmes, and Turnage, witnesses introduced by plaintiff for the purpose of proving statements made by plaintiff as to present pain and suffering at the time these witnesses were talking to her. We will give in full that part of the testimony to which objection is urged, and it will be noted that the plaintiff was not narrating past pain and suffering, or attempting to give a history of the cause of the accident, but is simply stating to them her present pain.

The first witness testifying on this subject was C. D. McNeese,

and the following questions were asked: "Q. I will ask you to state to the jury what evidences, if any, that you saw, or any result produced by that fall upon the lady.  A. I never spoke to the lady afterwards.  Q. Did you see her?  A. Yes, sir.  Q. Did you hear her talking?  A. I heard her tell her husband she— (Objected to.)  By the Court: I don't know whether it would be material or not.  Q. (by Mr. Miller).  What did she say to her husband?  (The defense objects.)  By the Court: I think that question would be too broad.  Q. (by Mr. Miller). Did she make any exclamations there of pain or suffering, and, if so, what were they?  (Objected to.  Objection sustained to the question in this form.)  Q. State whether or not there were any indications of pain or suffering by her there, and what they were, if any?  (Objected to as calling for the expression of an opinion pure and simple.  Objection overruled.  The defense excepted.)  A. From her appearance it looked to me like the woman was hurt.  (The defense here moves the court to exclude this last answer, which motion was sustained, and the plaintiff excepted.)  Q. What appearances, if any, did you see there of whether or not she had suffered any injury?  (The defense objects, because the question ought to ask the witness to state the appearance, without asking the witness what the appearances indicated, which motion was overruled, and the defense excepted.)  Q. Go on, Mr. McNeese.  A. Well, she was very pale, and looked like she was suffering.  (The defense moves the court to exclude the last half of the witness' answer.  Motion overruled.  The defense excepted.)  Q. Yes; let's don't chop up the truth and pinch off a little piece— (The defense objects to the above remark by Mr. Miller as being improper, and not dealing with the question before this jury.  Objection sustained.)  Q. What do you mean by 'she looked like she was suffering'?  A. Well, she was very restless, and changed her positions in the way she sat, and showed to me she was suffering.  Q. State, now, if she said anything on the subject of her sufferings, and, if so, what was it?  (Objected to.  Objection over-

ruled.  Defense excepts.)  A. I heard her tell her husband that she was hurt, and that she was suffering a good deal with her side.  (The defense moves the court to exclude the answer of the witness, detailing a conversation between the plaintiff and her husband, as being incompetent and hearsay.  Motion overruled.  The defense excepted.)  Q. Did you see them get into the Northeastern train?  A. I did not.  Q. Did you make any observation of the lady there at the Northeastern Depot?  A. Well, I was there in the sitting room where she was, and I was looking at them.  Q. I will ask you if there was anything about her that attracted your attention, as to whether or not she was suffering, and state what it was.  (The defense objects to the last question.  Objection overruled, and the defense excepted.)  A. Well, she was still very pale, and her actions, where she was sitting, she appeared to be suffering a good deal.  (The defense moves the court to exclude this answer.  The court excludes the latter part of the answer.  The plaintiff excepts.)  Q. What do you mean by the latter part of your answer?  Give the details on what you formed that estimate from, if anything.  A. From the appearances; just from her appearance.  Q. Could you detail again those appearances?  A. She seemed to be very restless.  (The defense moves the court to exclude this last answer.  Motion overruled.  The defense excepted.)  Q. That was at the Northeastern Depot.  Did she express anything indicating whether or not she was suffering?  If so, what did she say?  (Objected to.  Objection sustained.)  Q. State whether or not she complained of any suffering in the Northeastern Depot.  If so, what she said?  (Objected to.  Objection sustained.)  Q. If there was anything said there by her, please state what it was.  (Objected to.  Objection overruled.  Defense excepts.)  A. I never heard her say anything."

W. W. Holmes was the next witness, and his testimony was as follows: "Q. State whether or not you saw any indications of whether or not she was affected by that fall, and, if so, what they

were. (Objected to. Objection overruled. The defense excepted.) A. After the train went on for a good piece, the woman seemed to be suffering a good deal, and no one seemed to be paying her any attention. (Objected to. Objection sustained.) Q. Tell what you did. A. I walked across and made myself acquainted with Mr. Turnage. I asked him if his wife was hurt— (Objected to.) Q. Did you, or not, have a conversation with Mrs. Turnage, and what did she say indicating whether or not she was hurt? (Objected to. Objection overruled. Defense excepts.) A. Why, she said she was hurt, and from the expression on her face she showed me that she was hurt. (Objected to. Objection overruled. Defense excepts.) Q. What was the indication on her face? A. I couldn't tell you really. She looked to be suffering a great deal, and she continued rubbing her side and hip. (Objected to. Objection overruled. Defense excepts.)"

All that these witnesses testify to happened soon after the injury complained of.

John Turnage was the next witness, and his testimony was as follows, viz.: "Q. When did she return? A. She returned back here in January. Q. Some time the following January? A. Yes, sir. Q. They were gone four or five months? A. Yes, sir. Q. From the 29th of August until along in January? A. Some time in January. Q. Did you see her immediately upon her return? A. Yes, sir. Q. Did she go to your house? A. She went to my house, and stopped the night with me, the first night after returning back here. Q. Where did she go then? A. They knocked around among their kinfolks a few days. Q. They lived where? A. At Mr. Toney's, two and a half or three miles from me. Have you seen her frequently around since her return? A. I have seen her something like once a month. Q. When you first met her at your house that first night, state whether or not there was any change in her condition. If so, what was it? A. She didn't seem to be the same woman at all in her speech and in the way she would carry herself. She

would go stooped. It seemed to be difficult matter for her to· hold herself up. Q. Did you notice any other change. A. In her speech; she didn't speak like she did before. Well, Why? A. It seemed her tongue was stiff. (Objected to, because there· is no averment in the declaration of an injury of this sort. Objection sustained.) Q. I will ask you if there was any indication of weakness, and if so, what it as? A. I don't know that I could say as to that, but in the way she carried herself. She didn't move about as she had before. Q. Now, then, from that time on, has she complained, or not, of any suffering and, if so, what? (Objected to. Objection sustained.) Q. Well, at the time she came to your house, then—when she returned from South Carolina—I will ask you if she made any exclamations of pain and suffering, and, if so, what they were? (Defense objects to the witness being permitted to state what the plaintiff said to him about her condition upon her return from South Carolina, as incompetent and hearsay. (Objection overruled. Defense excepts.) A. How she said she was when she came back? Q. Well, yes? A. She complained of her head and her back hurting her a great deal, and very painful back. (The defense moves to exclude this answer. Motion overruled. Defense excepts.)"

The injury complained of was some time in August, and the matters testified about by John Turnage occurred the succeeding January; but it will be noted that the testimony of all these witnesses is as to present pain and suffering. Counsel for appellant relies on the following authorities as sustaining his contention: *Louisville R. R. Co. v. Shires*, 108 Ill. 617, 22 Cent. Law J. 512; *Pilkinton v. Gulf, etc., R. R. Co.*, 70 Tex. 226, 7 S. W. 805; *Kennedy v. Rochester, etc., R. R. Co.*, 130 N. Y. 654, 29 N. E. 141; *Johnston v. Oregon, etc., R. R. Co.*, 23 Ore. 94, 31 Pac. 283; *Roosa v. Boston Loan Co.*, 132 Mass. 439; *Augusta, etc., R. R. Co. v. Randall*, 79 Ga. 304, 4 S. E. 674; *Jones v. Portland*, 88 Mich. 598, 50 N. W. 731, 16 L. R. A. 437; *Atlanta, etc., R. R. Co. v. Gardner*, 122 Ga. 82, 49 S. E. 818;

*Klingaman v. Fish & Hunter Co.*, 19 S. D. 139, 102 N. W. 601;
*Keller v. Gilman*, 93 Wis. 9, 66 N. W. 800. The question
presented by the case decided in 108 Ill. 617, *supra,* was quite
different from that presented by the testimony here. It was con-
tended in the Illinois case that the court erred in refusing to per-
mit one Dr. Hunter to answer the following question: "Please
state what, in your judgment as a physician, is the present
malady of the plaintiff, according to the symptoms as given by
Dr. Tillotson"—and the court held that this testimony was prep-
erly excluded, saying: "We are not aware that it has ever been
held that a medical expert has the right to testify to an opinion
formed upon information derived from private conversations
with witnesses in the case, and we are not inclined to adopt a rule
of that character. A medical expert may examine the patient,
and from such personal examination give his opinion to the
jury." It will thus be seen that this case is no authority for
appellant. In the case of *Pilkinton v. Railway,* 70 Tex. 226,
7 S. W. 805, the question decided by the court was not at all
the one involved here. In the case above, the plaintiff sought
to prove on the trial by the wife of the injured party, as a part
of the *res gestae,* the substance of a statement made by the in-
jured husband to the wife as to how the injuries were received,
and the court held that such testimony was not admissible, be-
cause it was made too long after the injury to constitute a part
of the *res gestae,* and might have also added, as an additional
reason, that it was not admissible because it attempted to narrate
the cause of the injury, which testimony all authorities hold not
admissible. But if this testimony had been confined to an ex-
pression of present pain and suffering, as is the testimony here,
it would have been admissible. In the case of *Johnson v. Ore-
gon,* 23 Ore. 94, 31 Pac. 283, the statement excluded was a state-
ment made by the injured party as to the cause of the accident.
So also is the case of *Roosa v. Boston Loan Co.,* 132 Mass. 439;
also the case of *Augusta R. R. v. Randall,* 79 Ga. 304, 4 S. E.
674.

On an examination of all of the above cases, it is seen that the testimony offered and rejected was not of present pain and suffering, but it was an attempt to narrate the cause of the injury, and rejected on this account, or because it was so remote from the time of the accident as not to constitute a part of the *res gestae,* and these were the causes assigned by the various courts deciding these cases for the rejection of the testimony. Quite different were the questions there from the one in this case. In the case of *Jones v. Portland,* 88 Mich. 598, 50 N. W. 731, 16 L. R. A. 437, all that was decided was that, where a physician had been employed for the express purpose of making that physician a witness in the suit, exclamations of pain made by the injured party during examination cannot be testified to by the physician so employed for this express purpose. The holding in the case just cited is manifestly correct, since the court held merely that one could not be employed for the sole purpose of making testimony, and thus make admissible declarations of pain and suffering made to the party so employed; but the case is not in point here, nor does it run contrary to the principle contended for in the case now on trial. Of course, even though a physician may be employed for the express purpose of examining a person who has been negligently injured, in order that he may testify, such fact does not disqualify the physician from testifying as to the injury and extent of it gathered from the examination alone; but this fact may be considered by the jury as affecting the value of the testimony. The disqualification in such case only extends to the statements made by the injured party to the physician of pain and suffering, and the reason of the rule as opening the door is manifest.

We do not think the quotation made by counsel for appellant from page 512 of 22 Central Law Journal has any application to this case. An examination of that part of the article referred to and quoted in the brief shows that the writer is there dealing with a different question from the question in this case. The quotation from counsel's brief is from that part of the article in

Central Law Journal, above, where the author is speaking of the admissibility of testimony showing past pain and suffering and is discussing the competency of the injured party to testify as to this, and he says: "And although the injured party is a competent witness, he would not be permitted to testify in his own behalf to declarations of past pain and suffering he had made. This being true, it would be anomalous to hold that the party to whom such declarations were made could testify to them for declarant; there being no question of motive, or intent, or good faith involved. Taking the authorities as a whole, and considing the reason of the matter, it appears that declarations of past pain and suffering, narrative in their character, are not admissible in declarant's favor, no matter to whom or for what purpose." We do not disagree with the statement of the law contained above; but the author is not dealing with declarations made by the injured party of present pain and suffering, but with the narration by him of past pain and suffering, and herein lies the distinction. Declarations of present pain and suffering, no matter to whom made, are admissible as original evidence in all inquiries where pain and suffering constitute the question involved. Of course, there may be exceptional instances wherein such declarations would be rejected, such as, for instance, where one had been employed to make an examination of an injured party for the express purpose of making a witness of the person making the examination; but the general rule is above stated. Declarations made by an injured party, narrating the cause of the injury, or narrating past pain and suffering, do not come within the rule, and, being hearsay, cannot be testified to by the party to whom made, to be used either as original evidence or for the purpose of bolstering up the testimony of the injured party. While it is perfectly manifest that the author of the article in the Central Law Journal is opposed to the admission even as to present pain and suffering made by an injured party to another person, it is also equally manifest that the author is out of line with the almost unanimous authority on this subject.

While the author of this article expresses it as his own view on page 516 that "the true rule is that nonexperts should never be allowed to detail declarations and statements of past or present pain," he frankly states on page 513 that it is almost universally held "that declarations of present pain and suffering are admissible, to whomsoever made." In short, we do not agree with the conclusions reached in the above article, either on reason or authority.

In the case of *Atlanta, etc., R. R. Co. v. Gardner,* 122 Ga. 82, 49 S. E. 818, and *Kennedy v. Rochester & B. R. Co.,* 130 N. Y. 654, 29 N. E. 141, the former being a Georgia case and the latter being a New York case, the court in both cases did hold such testimony inadmissible, and we will take up these two cases and discuss them. In the Georgia case, the court seems to be simply following earlier decisions of its own cited in 122 Ga. and 49 S. E., on this subject as a matter of settled law in that state, but recognizes the fact that it is out of harmony with the general rule on this subject, as will be seen by reading that portion of opinion to be found in the second column of page 824, 49 S. E., and on page 96, 122 Ga.; where the court says: "While we feel some hesitancy in laying down a rule in this state which will run counter to the rule generally, if not universally, accepted elsewhere, we have reached the conclusion that there is no sound reason for making any exception in cases of this character to the rule which excludes hearsay testimony." It is thus seen that the Georgia court recognizes that the general rule is otherwise than as declared by that court. A little further on this same court says: "The distinction between statements of pain and suffering made to a physician and such statements made to any other person, so far as admissibility in evidence is concerned, has been rejected by a number of courts, including the supreme court of the United States, which court has held that 'the declarations of a party himself, to whomsoever made, are competent evidence, when confined strictly to such complaints, expressions, and exclamations as furnish evidence of a present existing pain

and malady, to prove his condition, ills, pains, and symptoms, whether arising from sickness, or from an injury by accident or violence. If made to a medical attendant, they are of more weight than if made to another person.' *Northern Pacific Railroad Co. v. Urlin,* 158 U. S. 271, 15 Sup. Ct. 840, 39 L. Ed. 977." And to this authority from the United States supreme court may also be added the case of *Travelers' Insurance Co. v. Mosley,* 8 Wall. 397, 19 L. Ed. 437, in part of opinion to be found on page 440, where the court says: "Wherever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings are original and competent evidence. Those expressions are the natural reflexes of what it might be impossible to show by other testimony. If there be such other testimony, this may be necessary to set the facts thus developed in their true light and to give to them their proper effect. As independent, explanatory, or corroborative evidence, it is often indispensable to the due administration of justice. Such declarations are regarded as verbal acts, and are as competent as any other testimony, when relevant to the issue. Their truth or falsity is an inquiry for the jury." Thus we have two decisions of the United States supreme court approving the rule admitting this character of testimony. In the *Travelers' Insurance Company case,* cited above, the supreme court of the United States uses this broad language in reference to the admissibility of such evidence, that if the statements are made "to a medical attendant, they are of more weight than if made to another person; but, to whomsoever made, they are competent evidence. Upon these points the leading writers upon the law of evidence, both in this country and in England, are in accord." See page 440, 19 L. Ed., and page 397, 8 Wall., in the case of *Travelers' Insurance Co. v. Moseley,* and authorities there cited. These cases are followed by the cases of *Denver & R. G. R. Co. v. Roller,* 100 Fed. 738, 41 C. C. A. 22, 49 L. R. A. 77; *Delaware, L. & W. R. Co. v. Roalefs,* 70 Fed. 21, 16 C. C. A. 601, and the numerous other authorities there cited.

In the New York case (130 N. Y. 654, 29 N. E. 141) relied on by counsel for appellant it is sufficient to say that New York, like Georgia, is out of harmony with the general rule.

Mr. Wigmore, in his treatise on the Law of Evidence, which in the judgment of the writer of this opinion is without an equal in its logical, accurate, and comprehensive statement of the rules governing the production of evidence, approves the rule adopted by the United States Supreme Court and almost all other courts, and says of the New York court the following, viz.: "In New York, and a few other jurisdictions following the New York rulings, the doctrine has been established that all pain statements whatever are subject to the general limitation that they must have been made to a physician during consultation. The truth seems to be that the New York limitation is inconsistent alike with precedent, with principle, with good sense, and with itself. Unfortunately, however, its place as a local anomaly has not always been perceived, and courts in several other jurisdictions have accepted the physician limitation of the modern New York cases as if they presented the orthodox rule." 3 Wigmore on Evidence, pp. 2210, 2211, §§ 1718, 1719.

We do not deem it necessary to pursue the discussion of the cases cited by counsel any further, since it must be manifest that the authorities relied upon do not support the contention, or, if they do, they are opposed to the almost universal rule, and, if followed, would often result in an obstruction of justice. In truth, there are only three other cases cited by counsel; one of them being the case of *Roche v. Brooklyn,* 105 N. Y. 294, 11 N. E. 630, 59 Am. Rep. 506. We have already discussed the position of the New York court on this question, so will pass this case, merely calling attention to the fact that it is a New York case. The case of *Keller v. Gilman,* 93 Wis. 9, 66 N. W. 800, is a decision sustaining the contention of appellant, but, as we have seen, is in opposition to the almost universal rule; and the same may be said of the case of *Klingaman v. Fish & Hunter Co.,* 19 S. D. 139, 102 N. W. 601, being a South Da-

kota case. The admissibility of these declarations and expressions is not dependent upon whether or not they constitute a part of the *res gestae,* but rests upon a wholly different principle, and should not be confounded or confused with that principle of law. Nor does time play any part in determining whether or not they are admissible, so long as the declarations and exclamations are confined to existent pain and suffering. Whether this character. of evidence be classed as exceptions to hearsay or as independent and original evidence, its admissibility is beyond question. We cite below a few authorities sustaining the view of the law expressed in. this opinion, and these authorities cite a multitude. *Cleveland, C., C. & I. Ry. v. Newell,* 104 Ind. 264, 3 N. E. 836, 54 Am. Rep. 312; *Kennard v. Burlon,* 25 Me. 39, 43 Am. Dec. 249; *Towler v. Blake,* 48 N. H. 92; 1 Greenleaf. Ev. (16th ed.) § 162*b.*

The remaining two assignments of error seek a reversal because of language used by one of the counsel for appellee in his closing argument to the jury, and because it is claimed that the verdict is excessive. As to the first proposition, it does not appear that any exception was taken to the argument now claimed to be cause for reversal at the time the argument was made, and, this being the case, we cannot reverse, even if we were to concede that the argument was improper; and on the second proposition we cannot say that the verdict was excessive. The jury heard the whole case, and on the evidence it was their judgment that appellee should recover the amount found by them, and we cannot say they were wrong.

*Affirmed.*