# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-00070-SCT
### consolidated with
## NO. 2004-KA-00375-SCT

*SCOTT ANTHONY FOLEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATES OF JUDGMENTS: | 12/17/2003 & 02/06/2004 |
| TRIAL JUDGE: | HON. GEORGE B. READY |
| COURT FROM WHICH APPEALED: | DeSOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BENJAMIN LOUIS TAYLOR |
| | JACK R. JONES, III |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/15/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., DICKINSON AND RANDOLPH, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Scott Anthony Foley was indicted in the Circuit Court of DeSoto County for: (1) felonious sexual intercourse with a child under the age of 14 and 24 months younger than Foley (rape); (2) felonious sexual penetration with a child less than 18 (sexual battery); and (3) possession of materials depicting children under the age of 18 engaging in sexually explicit conduct (child exploitation).   The first two counts pertained to Foley's conduct with a female

child, K.F. The third count pertained to other children who remained unidentified. A trial was held concerning the first two counts while a separate trial adjudicated the third. The appeals from both trials have been consolidated and all three counts are considered below.

**FACTS**

¶2. Scott Foley and Deborah Foley Houck were previously married and adopted Deborah's niece, K.F., during their marriage. After divorcing, Deborah retained physical custody of K.F. while Scott was allowed some visitation. Soon after a weekend visit with Foley, K.F., who was five years old at the time, told a therapist named Dr. Ruth Cash (sometimes referred to as Outz in the record) that Foley showed her pornographic images on his computer. K.F. also made comments to Cash indicating that Foley was undressing in front of K.F, placing a vibrator "in her," forcing her to "touch him," and forcing her to perform oral sex on him. A subsequent physical exam was conducted by Ninah Sublette, a sexual assault examiner, that revealed substantial injuries to K.F.'s vagina and anus consistent with some sort of blunt, penetrating trauma. K.F. also made remarks to Sublette indicating that Foley had performed oral sex on K.F., forced K.F. to touch him inappropriately, and inserted a vibrator into parts of K.F.'s body.

¶3. Scarlett Barnes, a social worker who talked with K.F. in a counseling session, also witnessed K.F. drawing pictures of what appeared to be penises and using explicit language to refer to the subject of those drawings when questioned. K.F. also drew pictures of sexual intercourse and mentioned the pictures were similar to events occurring at Foley's home the previous weekend. Josh Zacherias, a detective from the DeSoto County Sheriff's Department, was informed of the allegations of sexual abuse of K.F. by the Department of Human Services

and obtained a search warrant to search Foley's home. Vibrators matching descriptions given by K.F. were found in locations where K.F. indicated they were kept. Stacks of compact discs containing pornographic images of children were also found in Foley's home and seized. Foley's home computer was also seized and later turned over the Federal Bureau of Investigation. Foley was arrested and charged with capital rape, sexual battery, and possession of child pornography. Foley was tried and found guilty of all counts in separate trials. On Counts I and II, the circuit court sentenced Foley to life imprisonment for the crime of capital rape and thirty years for the crime of sexual battery. On Count III, Foley was sentenced to twenty years for possession of child pornography.

## DISCUSSION

¶4. The two separate appeals are consolidated into one opinion because of common issues of law and facts and for judicial economy. We will begin our discussion with issues common to both trials and then consider issues specific to one of Foley's two trials.

## Standard of Review

¶5. Many issues presented by Foley concern evidentiary rulings of the circuit court and will be examined under an abuse of discretion standard. *Broadhead v. Bonita Lakes Mall, Ltd. P'ship*, 702 So. 2d 92, 102 (Miss. 1997) (citing *Sumrall v. Miss. Power Co.*, 693 So. 2d 359, 365 (Miss. 1997)). Issues requiring a different standard of review are noted below and analyzed accordingly.

## *ISSUES COMMON TO BOTH TRIALS*

**I.** **WHETHER THE CIRCUIT COURT ERRED IN ADMITTING STATEMENTS MADE BY A CHILD TO MEDICAL PERSONNEL INTO EVIDENCE**.

¶6.    Foley contends that in both cases the trial court erred by allowing statements of K.F. to be brought before the jury through the testimony of medical professionals who examined or interviewed K.F.   The State called a number of medical professionals and counselors as part of its case-in-chief.   One of those witnesses, Dr. Cash, was to testify as to statements made to her by K.F.   Recognizing that such statements would be hearsay, the circuit court judge first determined that the statements of K.F. to Dr. Cash would be admissible under Mississippi Rule of Evidence 803(4) as a statement made for the purposes of medical treatment, and thus an exception to the hearsay rule of exclusion.[1]

---

[1] The comment to Mississippi Rule of Evidence 803(4) reads:

(4)    Statements for Purposes of Medical Diagnosis or Treatment.  Rule 803(4) represents a deviation from previous Mississippi practice in three significant ways.   First, Rule 803(4) permits statements of past symptoms as well as present symptoms.   Second, the rule allows for statements which relate to the source or cause of the medical problem whereas Mississippi courts formerly disallowed such statements.  *See Field v. State*, 57 Miss. 474 (1879), and *Mississippi Cent. R.R. Co. v. Turnage*, 95 Miss. 854, 49 So. 840 (1909), for pre-rule Mississippi law.   While statements about cause are permissible, statements concerning fault are still subject to being excluded.   Third, the statements may be made either to a physician or to diagnostic medical personnel.   Mississippi's pre-rule practice distinguished between narrative statements made to a treating physician and those made to an examining physician who was retained for use as an expert witness in the litigation. Statements made to the former were generally admissible, whereas no statements made to the latter were admissible.  *See Mississippi Cent. R.R. Co. v. Turnage*, 95 Miss. 854, 49 So. 840 (1909).  Rule 803(4) eliminates that distinction and permits statements made both for treating and diagnostic purposes.  Under Rule 803(4) the statement need not be made to a physician. This is consistent with traditional Mississippi practice.

    The amendment to Rule 803(4) is a recognition that medical diagnosis

4

¶7. K.F.'s statements made to Dr. Cash in the course of therapy fall easily into the exception outlined above. In addition to the exception under M.R.E. 803(4), the circuit court judge interviewed K.F. and found her to be unavailable as a witness due to her young age and because of developmental characteristics that would make questioning of her impractical, if not impossible. K.F.'s age, court-determined unavailability, and the nature of the allegations in the case put K.F.'s statements squarely within the tender years exception to hearsay as provided by Mississippi Rule of Evidence 803(25).[2]

¶8. As stated above, though, M.R.E. 803(25) requires a three-pronged test be met before a child's testimony may admissible in evidence under the tender years exception. First, it must be shown that a child of tender years has described some sexual contact with or on the child by another; second, the court must find that a number of factors show that the statements

---

and treatment may encompass mental and emotional conditions as well as physical conditions. Moreover, the rule, by requiring the judge to find trustworthiness, gives the trial judge greater discretion than the original rule. By permitting the recipient to be non-medical personnel, M.R.E. 803(4) modifies case law interpretations of the former language of this exception and now conforms with prevailing interpretations of F.R.E. 803(4). *See* F.R.E. 803(4), Advisory Committee Notes.

[2]M.R.E. 803(25) provides as follows:

Tender Years Exception. A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

contain substantial indicia of reliability; and finally, either the child must testify at the proceedings or be unavailable. Before a child may be rendered unavailable, however, M.R.E. 803(25) requires that there be corroborative evidence of the act before the statement(s) be admitted. The first criterion is easily met inasmuch as K.F. was five to six years old at the time of her allegations of sexual abuse. As to the prong concerning substantial indicia of reliability, the comments to M.R.E. 803(25) give a number of factors to be considered when determining whether a child's allegations of sexual abuse meet the reliability standard.[3]

¶9.     In the present case, the circuit court judge interviewed K.F. personally and examined the context of the statements she made. We find that K.F.'s statements had the requisite substantial indicia of reliability and the circuit judge's decision to apply the tender years exception to K.F.'s testimony was not in error. K.F.'s comments, spontaneously made to a number of professionals trained to detect abuse and its effects, showed an overwhelming sense of adult knowledge of sexual topics of which children in their earliest years should have no knowledge. Additionally, the statements were made without the presence of adults who might

---

[3]The comment to M.R.E. 803(25) states as follows:

(1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.

have coached her and, based on expert testimony, were voluntarily given and not elicited by certain questions. The defense objected to the reliability of K.F.'s statements by pointing out the possibility that K.F.'s allegations were related to a custody battle, that there were allegations of abuse by people other than Foley, and that K.F. exhibited signs of immaturity. The circuit court judge, though, was in the best position to make that determination, and there is no evidence that the circuit judge faltered in finding K.F.'s statements contained the required substantial indicia of reliability.

¶10. The hearsay exception under M.R.E. 803(25) requires that a child either testify or, if unavailable, the child's statements are corroborated with evidence of the act alleged. The circuit judge determined that due to age and developmental issues, K.F. was unavailable to testify. Foley argues that this also made her statements unreliable, but M.R.E. 803(25) expressly contradicts this argument by allowing an unavailable child's testimony to be admissible so long as it passes the safeguards to protect against untrustworthy testimony. There is no doubt that the overwhelming physical evidence of abuse to K.F.'s person corroborated the statements by K.F. alleging sexual abuse. Thus, K.F's statements met all the criteria to find admission under the tender years exception and the medical statement exception to hearsay. Foley incorrectly avers that the circuit court restricted his Sixth Amendment rights to cross-examine K.F. by allowing the testimony of medical professionals to bring in K.F.'s comments. Foley's argument ignores the fact that such allowances make up the basic nature of hearsay exceptions based on the unavailability of the declarant. Foley's arguments to the contrary are without merit.

7

¶11. Foley asserts an additional argument on this issue in the appeal of his second trial. Foley asks us to find that allowing such testimony violated his Sixth Amendment right to confront adverse witnesses as discussed by the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The United States Supreme Court's decision in *Crawford* held that out-of-court statements by witnesses that are testimonial in nature are not allowed under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Id.* Foley argues that admitting the testimony of medical personnel and counselors concerning K.F.'s statements violates *Crawford* because he had no chance to cross-examine K.F. Under *Crawford*, Foley must show that K.F.'s statements were "testimonial" in order for them to violate the Confrontation Clause. *Id.* at 50-53. The Supreme Court stated that, at a minimum, statements of a testimonial nature include "prior testimony at a preliminary hearing, before a grand jury, or at a former trial" and police interrogations. *Id.* at 68. The Court declined to further elaborate on its definition. *Id*. Statements made by K.F. do not fall into any of those categories, and Foley failed to argue or show that the therapists or medical professionals who testified concerning statements made by K.F. had contacted the police or were being used by the police as a means to interrogate K.F. or investigate her claims. *See, e.g.* *State v. Snowden*, 385 Md. 64, 867 A.2d 314, 326 (Md. 2005). K.F.'s statements were made as a part of neutral medical evaluations and thus do not meet *Crawford's* "testimonial" criterion. Thus, Foley's *Crawford* argument is without merit.

## II. WHETHER IT WAS ERROR TO DENY FOLEY'S MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO A SEARCH WARRANT.

¶12.  Foley argues that the circuit court in both cases erred in not granting his pretrial motion to suppress evidence obtained by a search warrant.  Specifically, Foley argues that the warrant was not supported by probable cause and that the supporting affidavit and facts relied on hearsay.  When reviewing a finding of probable cause to issue a warrant "this Court does not make a de novo determination of probable cause, but only determines if there was a substantial basis for the magistrate's determination of probable cause." *Smith v. State*, 504 So. 2d 1194, 1196 (Miss. 1987).  Federal and state common law favor a totality of the circumstances test when deciding if probable cause is present:

> The United States Supreme Court has established a "totality of the circumstances" standard for determining the existence of probable cause:  The task of the issuing magistrate is simply to make a practical, common-sense decision based on all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information. *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983).  We adopted the *Gates* "totality of the circumstances" test in *Lee v. State*, 435 So. 2d 674, 676 (Miss. 1983).

*State v. Woods*, 866 So. 2d 422, 425-26 (Miss. 2003).

¶13.  Probable cause has also been defined as "more than a bare suspicion but less than evidence that would justify condemnation." *Id.* (citing *Wagner v. State*, 624 So. 2d 60, 66 (Miss. 1993)).  Looking at the totality of the circumstances, K.F. specifically stated that Foley showed her pictures of nude people on his computer screen doing things she described as "gross."  She used language to describe acts performed on her and by her in relation to Foley

9

in such sexually explicit terms that veracity could easily be inferred. Additionally, police were alerted to the fact that K.F.'s body showed evidence of recent sexual assault, and that she had been in the presence of Foley within the last seventy-two hours. When considering all of the circumstances present at the time of the warrant's issue, the circuit court judge did not err in either trial in his finding that probable cause did exist in refusing to suppress evidence recovered as a result of the warrant at issue.

### III. WHETHER THE CIRCUIT COURT ERRED IN DENYING FOLEY'S PROPOSED JURY INSTRUCTIONS.

¶14. Foley claims the circuit court erred in refusing his proposed instructions, D-3 and D-4. When examining a trial court's determination as to appropriate jury instructions, parties are only entitled to fair instructions giving adequate recitation of the law:

> [W]hile a party is entitled to have jury instructions submitted that represent his or her theory of the case, an instruction that "incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence" need not be submitted to the jury. *Humphrey v. State*, 759 So. 2d 368, 380 (Miss. 2000). This Court will not find reversible error where the instructions actually given, when read together as a whole, "fairly announce the law of the case and create no injustice." *Coleman v. State*, 697 So. 2d 777, 782 (Miss. 1997) (citing *Collins v. State*, 691 So. 2d 918, 922 (Miss.1997)).

*Entergy Miss., Inc. v. Bolden*, 854 So. 2d 1051, 1054 (Miss. 2003).

¶15. Both of the proposed instructions dealt with instructing the jury on circumstantial evidence. "[W]here there is direct evidence of a crime, the circumstantial evidence instruction need not be given." *King v. State*, 580 So. 2d 1182, 1191 (Miss. 1991) (citing *Gray v. State*, 549 So. 2d 1316, 1324 (Miss. 1989)). Additionally, a circumstantial evidence case "is one in which there is neither an eyewitness nor a confession to the crime." *Mangum v. State*, 762

10

So. 2d 337, 344 (Miss. 2000). While there are certainly more types of direct evidence than eyewitness testimony or confessions, the instant case easily meets the standard in *Mangum*. K.F.'s statements about being shown pornography were introduced through the testimony of Dr. Cash and Barnes. K.F. was, of course, an eyewitness to the pornography, and this instance of direct evidence alone allowed the jury to be given direct evidence instructions only. Foley's argument to the contrary is without merit.

¶16. In his second trial, Foley's request for a jury instruction on circumstantial evidence was also rejected by the circuit court. The circuit judge found K.F.'s medical report constituted actual or direct evidence. Additionally, as stated before, the presence of an eyewitness necessarily precludes a case from having circumstantial evidence instructions. *Id*. K.F. was clearly an eyewitness to the abuse committed upon her person. Testimony by others clearly outlined this and introduced the jury to statements by K.F. since she was unavailable as a witness. Thus, the circuit court was not in error when it refused to present the jury with the defense's proposed circumstantial evidence instructions in either trial.

### ISSUE ON APPEAL FROM CONVICTION OF COUNT III (POSSESSION OF CHILD PORNOGRAPHY)

**IV. WHETHER THE CIRCUIT COURT IMPROPERLY OVERRULED OBJECTIONS AND DENIED MOTIONS MADE BY FOLEY.**

¶17. Foley argues that statements by the prosecutor during cross-examination of a witness and during his closing statements warranted a mistrial. The first assignment of error that Foley

11

makes involves a defendant's right not to testify in a proceeding. Comments referring to a defendant's right not to testify are generally unacceptable:

> No person ⋯ shall be compelled in any criminal case to be a witness against himself, ⋯U.S. Const. Am. 5. *See also* Miss. Code Ann. section 13-1-9 (1972); *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). This constitutional right has been construed by this Court to have been violated, not only when a direct statement is made by the prosecution as to the defendant's not testifying, but also by a comment which could reasonably be construed by a jury as a comment on the defendant's failure to testify. *Jimpson v. State*, 532 So. 2d 985, 991 (Miss. 1988); *Livingston v. State*, 525 So. 2d 1300, 1305-08 (Miss. 1988); Monroe v. State, 515 So. 2d 860, 865 (Miss. 1987); *Bridgeforth v. State*, 498 So. 2d 796, 798 (Miss. 1986); *Wilson v. State*, 433 So. 2d 1142, 1146 (Miss. 1983); *Davis v. State*, 406 So. 2d 795, 801 (Miss. 1981).

*Griffin v. State*, 557 So. 2d 542, 552 (Miss. 1990).

¶18. In the instant case, the prosecutor stated in his closing arguments that "you have to rely on your own memories, because I am not a witness. They're not a witness. . . ." Foley objected and stated that this remark created negative inferences based upon Foley's choice to exercise his right not to testify. In response to the objection, the prosecution explained that the word "they" referred to the attorneys and not the defendant. The circuit judge overruled the objection, and the prosecution was allowed to continue. Trial judges are best positioned to determine if an attorney's closing arguments created unjust prejudice against a party:

> In *Eckman v. Moore*, 876 So. 2d 975, 994 (Miss. 2004), we summarized the standard of review for closing arguments: Attorneys have wide latitude in closing arguments. Notwithstanding the wide latitude afforded in closing arguments "[t]he standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice . . . so as to result in a decision influenced by the prejudice so created." This Court has held that "any alleged improper comment must be

12

viewed in context, taking the circumstances of the case into consideration." The trial judge is in the best position to determine if an alleged objectionable remark has a prejudicial effect.

*Burr v. Miss. Baptist Med. Ctr.*, --- So. 2d ----, 2005 WL 1498868, at *1 (Miss. 2005).

¶19.    It is clear from the context of the sentences that the prosecutor was referring to the attorneys and not Foley.   The prosecutor first pointed out that he was not a witness and then made the statement Foley brings into issue.   Nothing from the prosecutor's express words or any reasonable inference from those words points to Foley.    Looking to the particular comments and facts of this case, no serious or irreparable damage was inflicted on Foley by a statement that could not reasonably have been construed to be a comment upon Foley's failure to take the stand.    Foley's constitutional rights were not violated, and there is no evidence that the prosecutor's comments in closing had any sort of a prejudicial effect on the jury warranting reversal.

¶20.    Foley next asserts an identical assignment of error concerning statements made by the prosecution in its questioning of his father, Nicholas Foley.    Nicholas was asked on cross-examination whether or not he was aware of a statement made by his son in a deposition concerning a civil matter.   The purported purpose of the prosecution's question was to impeach the credibility of the witness using a prior inconsistent statement made by Scott Foley.   The defense vigorously objected, and the circuit court sustained the objection reasoning that impeachment of the witness using extrinsic evidence was inappropriate.    The circuit court judge subsequently ordered jurors to disregard the question.   Foley's counsel moved for a mistrial on the grounds that it drew attention to and encouraged inferences concerning Foley's

13

choice not to testify. The motion was denied because the circuit court determined that the statements would not affect the ultimate issue of the case and could be removed from the minds of the jury by a verbal instruction to disregard. A trial court can best determine if irreparable harm resulted from arguments made in a particular case:

> [t]he trial court is in the best position to weigh the consequences of an objectionable argument and, unless serious and irreparable damage has occurred, at that point admonish the jury to disregard the improper comment. *McGilberry v. State*, 741 So. 2d 894, 909 (Miss. 1999). Whether there is error based on improper prosecutorial comments must be determined according to the facts of the particular case.

*Baldwin v. State*, 784 So. 2d 148, 164 (Miss. 2001).

¶21. Additionally, the standard of review for rulings on motions for mistrial are abuse of discretion. *Pulphus v. State,* 782 So. 2d 1220, 1223 (Miss. 2001) (citing *McGilberry v. State*, 741 So.2d 894, 907 (Miss. 1999)). Considering the facts surrounding the disputed comments under the analysis outlined above, we find that no serious and irreparable harm resulted. The circuit court correctly told the jury to disregard the line of questioning and denied Foley's motion for mistrial. Doing so did not constitute an abuse of discretion. *Id*.

¶22. Finally, Foley maintains that a motion for mistrial should have been granted because of comments made by the prosecutor concerning the failure of the defense to call a witness. One of Foley's primary defenses was the possibility that someone else had placed the pornographic images on his computer. The prosecution's closing statements made reference to the defense counsel's failure to call a child who had lived in Foley's home for a few months with his

14

mother and Foley. Defense counsel objected to the statements, but the circuit court overruled the objection and instructed the jury to disregard the statements by the prosecutor.

¶23. "[T]he general principle is that 'the failure of either party to examine a witness equally accessible to both is not a proper subject of comment before the jury by either of the parties.'" *Brown v. State*, 200 Miss. 881, 27 So. 2d 838, 840 (1946) (citing *Heafner v. State*, 196 Miss. 430, 17 So. 2d 806, 808 (1944)). *Burke v. State*, 576 So. 2d 1239, 1241 (Miss. 1991); *see also Madlock v. State*, 440 So. 2d 315, 317-18 (Miss. 1983); *Doby v. State*, 557 So. 2d 533, 538-39 (Miss. 1990); *Holmes v. State*, 537 So. 2d 882, 885 (Miss. 1988); *Griffin v. State*, 533 So. 2d 444, 449 (Miss. 1988); *Brock v. State*, 530 So. 2d 146, 154-55 (Miss. 1988); *Williams v. State*, 522 So. 2d 201, 206-07 (Miss. 1988)).

¶24. Foley argues that we must follow this principle and reverse his conviction. However, "where there is substantial evidence supporting the defendant's guilt, a prosecutor's comment about a potential witness's absence is not reversible error in and of itself." *Id.* (citing *Brock*, 530 So. 2d at 154-55). Such comments should only be considered reversible error if the evidence in the case is close or is a part of a number of compounded errors meriting reversal. *Burke*, 576 So. 2d at 1241. We recognize that there have been other procedural errors in the trial of Foley on the charge of possession of child pornography, but none of them, even when considered collectively, rise to the level of that which constitutes reversing the circuit court's refusal to grant a mistrial. A defendant is not entitled to a perfect trial, only a fair one. *Stringer v. State*, 500 So. 2d 928, 947 (Miss. 1986) (citing *Sand v. State*, 467 So. 2d 907

15

(Miss. 1985); **Bell v. State**, 443 So. 2d 16 (Miss. 1984); **Palmer v. State**, 427 So. 2d 111 (Miss. 1983); **Shaw v. State**, 378 So. 2d 631 (Miss. 1979)).

¶25. There is no evidence that this single comment had a prejudicial effect warranting reversal, and considering the overwhelming evidence, including testimony by a number of witnesses and the actual presence of pornographic images on Foley's computer, the inappropriate comments by the prosecutor concerning the absence of defense witnesses did not warrant a mistrial since instructing the jury to disregard the comments was an appropriate response by the trial court. Accordingly, the trial court's decision was not an abuse of discretion and Foley's arguments to the contrary are without merit.

*ISSUES ON APPEAL FROM CONVICTION OF COUNTS I AND II*
*(CAPITAL RAPE AND SEXUAL BATTERY)*

**V. WHETHER IT WAS ERROR TO ADMIT A PHOTOGRAPH OF THE VICTIM INTO EVIDENCE.**

¶26. Foley asserts that the trial court's admission of a photograph of K.F. into evidence was in error. However, Foley did not contemporaneously object to the introduction of such evidence and cannot now complain about something which he did not object to in his trial. "A failure to object at trial waives any error which may have been presented, even in capital cases." **Duplantis v. State**, 644 So. 2d 1235, 1245 (Miss. 1994) (quoting **Chase v. State**, 645 So. 2d 829, 859 (Miss.1994)); **Smith v. State**, 724 So. 2d 280, 316 (Miss. 1998). Foley's argument is procedurally barred and thus without merit.

**VI. SUFFICIENCY OF THE EVIDENCE.**

16

¶27. Foley also questions the sufficiency of the evidence offered to uphold the jury verdict in this case. A question of sufficiency of the evidence is one best examined by considering whether the defendant committed the crime beyond a reasonable doubt; specifically:

> in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968).

*Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005).

¶28. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* We find, after reviewing all the evidence in the most favorable light to the prosecution, that there was sufficient evidence to convict Foley of capital rape and sexual assault. The State offered the testimony of a number of medical and counseling professionals indicating that K.F.'s statements were consistent with those of a sexual abuse victim. K.F. named Foley as the perpetrator, and the State offered physical evidence in the form of medical diagnoses and test results as well as many of the objects K.F. stated Foley utilized in his abuse of her. Because of such evidence, we find that a rational juror could have found Foley guilty of both crimes beyond a reasonable doubt. Accordingly, we will not disturb the jury's verdict or reverse the trial court's decision to refuse to grant a directed verdict or judgment notwithstanding the verdict.

17

## VII. WHETHER THE CIRCUIT COURT ERRED IN OVERRULING FOLEY'S OBJECTIONS TO EVIDENCE OF OTHER CRIMES.

¶29. The next assignment of error Foley makes is what he refers to as the circuit court's erroneous allowance of "other crimes" of Foley to be presented to the jury. Specifically, during the cross-examination of Houck, Foley's ex-wife, counsel for Foley questioned Houck about a restraining order against Foley which she had requested. Houck had been called by the defense as an adverse witness. Subsequent questioning of Houck by the prosecution also involved the restraining order. Foley objected to such questioning, but the circuit judge overruled the objection pointing out that the defense had initially asked Houck about the restraining order and could not block the prosecution's questions concerning a document the defense had brought to light in questioning. Foley's contentions of a wrongful introduction of other crimes or bad acts fails because, once a defendant opens the door and invites questioning on a matter, then that defendant may not complain of such alleged errors "invited or induced by himself." *Caston v. State*, 823 So. 2d 473, 502 (Miss. 2002) (quoting *Singleton v. State*, 518 So. 2d 653, 655 (Miss. 1988)); *see also Evans v. State*, 547 So. 2d 38, 40 (Miss. 1989); *Edwards v. State*, 441 So. 2d 84, 90 (Miss. 1983). Based on the foregoing authority, the circuit judge did not abuse his discretion in allowing the prosecution's questions about areas already reached by questions of Foley's counsel.

## VIII. WHETHER FOLEY'S CROSS-EXAMINATION OF A WITNESS WAS IMPROPERLY RESTRICTED.

¶30. During his trial, Foley called Houck as an adverse witness. Counsel for Foley began questioning Houck about her son's counseling for sexual issues and her intimate relationship

with a man. The State objected on grounds of relevance and improper impeachment. Foley's counsel made a number of ambiguous statements about the relevancy of the line of questioning to aid in the establishment that other men or youth could have caused K.F.'s injuries. Foley wanted to bring in information that Houck had committed adultery and the like. The circuit judge refused to allow Foley's attorneys to question Houck about the man to whom she is now married because the circuit court found that this testimony had no relevance. "[T]he scope of cross-examination though ordinarily broad, is within the sound discretion of the trial court and the trial court possesses inherent power to limit cross-examination to relevant matters." *Heflin v. State*, 643 So. 2d 512, 518 (Miss. 1994). *See also Carr v. State*, 655 So. 2d 824, 847 (Miss. 1995). Foley's assertions simply are not substantiated by the record, and we find that the circuit court judge did not abuse his discretion in finding that the questions being asked failed to meet basic relevance requirements concerning either the son or the father.

### IX. WHETHER FOLEY'S CLOSING ARGUMENT WAS IMPROPERLY RESTRICTED.

¶31. Foley also alleges error based on the circuit court's restricting his counsel's closing arguments. Specifically, the circuit court sustained an objection by the State made upon defense counsel's statements that "[W]e didn't hear from [G.F.] Nobody knows where he is. His mother testified he was up in Memphis." The objection alleged that defense counsel was, in effect, testifying as to G.F.'s failure to appear at trial as a witness. Foley was attempting to show that G.F., Deborah Houck's son, could have been the perpetrator and cast doubt on the State's evidence that Foley was the one responsible for the acts against K.F. Before he

19

sustained the objection, the circuit judge called counsel for both sides to the bench. The bench conference was not transcribed in the record. After a brief talk, the circuit judge announced that the statement was to be disregarded by the jury. The judge said, "[T]hat's not an appropriate argument under the law. They could have gotten him if they wanted to, could have attempted it anyway." "[T]he standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice ... so as to result in a decision influenced by the prejudice so created." *Eckman*, 876 So. 2d at 944.

¶32. Both Foley and the State focus their arguments on the availability of Houck's son, G.F., and whether it was permissible to comment upon his absence as a witness in closing arguments. Foley points out that there was an attempt to subpoena G.F., but from the judge's comments, it is apparent that the circuit court determined that Foley had not adequately attempted to secure G.F. as a witness. The trial court also made reference to the statements not being appropriate under the law. Indeed, "[t]he general principle is that 'the failure of either party to examine a witness equally accessible to both is not a proper subject of comment before the jury by either of the parties.' *Brown v. State*, 27 So. 2d at 840 (citing *Heafner v. State*, 196 Miss. 430, 17 So. 2d 806, 808 (1944))." *Burke*, 576 So. 2d at 1241.

¶33. Foley fails to show why the witness was unavailable. Simply failing to have a witness under subpoena does not render them unavailable. The circuit judge obviously found evidence that Foley could have obtained G.F.'s presence in court with some amount of reasonable effort but failed to do so. Foley asks us to find that the trial court judge's reasoning was flawed, but

20

did nothing to preserve the judge's objectionable reasoning in the record for appeal. A presumption of equal access to both parties arises when the record provides no proof of the absent witness's accessibility or inaccessibility. **Ross v. State**, 603 So. 2d 857, 864 (Miss. 1992) (citing **Madlock v. State**, 440 So. 2d 315, 318 (Miss. 1983)); *see also* **Holmes v. State**, 537 So. 2d 882 (Miss. 1988). We find no reason to disturb the ruling of the circuit judge since we have not been presented with a showing of prejudice to Foley and has not been shown why the circuit court's judgment was incorrect in finding that G.F. could have been found through reasonable effort by Foley. Foley's complaint to the alternative is without merit.

## X. WHETHER LIFE IMPRISONMENT WAS AN EXCESSIVE SENTENCE.

¶34. Foley challenges the authority of the circuit court to impose a life sentence for the conviction of his crime under Miss. Code Ann. § 97-3-65 (1)(b) (Rev. 2000). The State and Foley point to statutory guidelines for sentencing for a statutory rape conviction in § 97-3-65 (2)(c). However, the accurate subsection is Miss. Code Ann. § 97-3-65 (3)(c) (Rev. 2000) for statutory rape convictions, and concerning sentencing states that "[I]f eighteen (18) years of age or older and convicted under paragraph (1)(b) of this section, to imprisonment for life in the State Penitentiary or such lesser term of imprisonment **as the court may determine**, but not less than twenty (20) years"(emphasis added). It was the intent of the state legislature, Foley argues, that the jury determine his sentence and not the judge. Foley makes reference to § 97-3-79 of the Mississippi Code which covers the crime and sentencing of the commission of a robbery with a deadly weapon. Foley points to the fact that a person

21

convicted of robbery with a deadly weapon is entitled to have the jury decide his sentence.[4] It is obvious from the language in § 97-3-79 that the jury was intended to arrive at a sentence for a convicted defendant. In contrast, though, the Legislature used words indicating judicial discretion would be the determination for crimes of statutory rape in § 97-3-65 (2)(c). Foley assertions to the contrary are without merit.

## CONCLUSION

¶35.   Scott Foley's assertions of error by the trial court are either too slight to warrant reversal or without merit completely.   Accordingly, we affirm the circuit court's judgments.

¶36.   **CASE NUMBER 2004-KA-00375-SCT:**

**COUNT ONE:   CONVICTION OF CAPITAL RAPE AND SENTENCE OF LIFE IMPRISONMENT   IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT HOPE OF PAROLE OR PROBATION, WITH CONDITIONS, AFFIRMED.  SAID SENTENCE IS TO BEGIN AT THE EXPIRATION OF THE CONSECUTIVE SENTENCES IMPOSED IN COUNTS TWO AND THREE IN THIS CAUSE.  COUNT TWO: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF**

---

[4]Miss. Code Ann. § 97-3-79 provides as follows:

Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary **if the penalty is so fixed by the jury**; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.

(Emphasis added).

CORRECTIONS, WITHOUT HOPE OF PAROLE OR PROBATION, WITH CONDITIONS, AFFIRMED. SAID SENTENCE IS TO BE SERVED CONSECUTIVELY WITH THE TWENTY (20) YEAR SENTENCE PREVIOUSLY IMPOSED IN COUNT THREE IN THIS CAUSE.

CASE NUMBER 2004-KA-00070-SCT:

COUNT THREE: CONVICTION OF CHILD EXPLOITATION AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT HOPE OF PAROLE OR PROBATION, WITH CONDITIONS, AND PAYMENT OF A FINE IN THE AMOUNT OF $1,000.00, AFFIRMED.

SMITH, C.J., COBB, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.